ALBERT C. BEAVER, JR., Plaintiff-Appellee, *v.* COUNTRY MUTUAL INSURANCE COMPANY, Defendant-Appellant.

Fifth District No. 79-607

Opinion filed April 20, 1981.

Ducey & Feder, Ltd., of Belleville (C. Patout Ducey, of counsel), for appellant.

John P. Kujawski and Jeanne Sathre, both of Cohn, Carr, Korein, Kunin, Schlichter & Brennan, of East St. Louis, for appellee.

Mr. JUSTICE JONES delivered the opinion of the court:

This case presents for the first time in Illinois the issue of whether public policy permits insurance against liability for punitive damages that arise out of an insured's own misconduct. The appeal grows out of a garnishment action brought by the plaintiff, Albert Beaver, Jr., in order to

recover from the defendant, Country Mutual Insurance Company, punitive damages in the amount of $5,000. Those damages had been assessed during a jury trial against Country Mutual's insured, Thomas Mudge, who is not a party to this appeal.

While a transcript of the proceedings at trial is not a part of the record on review, according to the count of the complaint in which punitive damages were sought, Mudge had "willfully and wantonly" operated a motor vehicle by driving it while intoxicated and by leaving the scene of the accident. The jury had also awarded plaintiff compensatory damages of $30,000, which the insurer paid, together with interest and costs. The insurer refused, however, to pay anything with respect to the punitive damages, whereupon plaintiff instituted the garnishment proceeding. Upon defendant's motion to dismiss the garnishment action, the trial court ruled in favor of plaintiff, ordering defendant to pay the amount of punitive damages plus interest and costs. From this order defendant appeals, raising first a public policy issue and, in the alternative, an issue of whether the language of the policy itself may be said to include coverage for punitive damages. Defendant does not contend that the award of punitive damages was in any way improper.

■■ Although a few jurisdictions, such as Connecticut (see *Tedesco v. Maryland Casualty Co.* (1941), 127 Conn. 533, 18 A.2d 357), consider the function of punitive damages as additional compensation to the plaintiff, in Illinois, as in most jurisdictions that permit the imposition of such damages, they are intended to punish, to deter. This function is expressed in the instruction for exemplary damages, No. 35.01, contained in Illinois Pattern Jury Instructions (IPI), by which the jury is told,

> "If you find that defendant was guilty of wilful or wanton conduct which proximately caused injury to plaintiff and if you believe that justice and the public good require it, you may, in addition to any damages to which you find plaintiff entitled, award plaintiff an amount which will serve to punish the defendant and to deter others from the commission of like offenses." (IPI Civil No. 35.01 (2d ed. 1971).)

Punitive damages are, we are told in *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 187-88, 384 N.E.2d 353, 360, in the nature of a criminal penalty:

> "[T]he function of punitive damages is similar to that of a criminal penalty, *i.e.*, as a punishment to the wrongdoer and as a means to deter such a wrongdoer and others from committing like offenses in the future."

The courts of the various jurisdictions that have considered the question of whether one may insure against liability for punitive damages arising out of one's own misconduct are sharply—and about equally—

divided in their results. (See Annot., 20 A.L.R. 3d 343 (1968).) Legal commentators, however, have not so sharply split on this issue; most oppose such insurance. See Haskell, *Punitive Damages: The Public Policy and the Insurance Policy*, 58 Ill. B. J. 780 (1970); Gonsoulin, *Is an Award of Punitive Damages Covered Under an Automobile or Comprehensive Liability Policy?* 22 Sw. L. J. 433 (1968); McKillip, *Punitive Damages in Illinois: Review and Reappraisal*, 27 DePaul L. Rev. 571 (1978); Note, *Exemplary Damages in the Law of Torts*, 70 Harv. L. Rev. 517 (1957); Note, *Automobile Liability Insurance and Punitive Damages*, 39 Temple L. Q. 459 (1966).

We think the better view, and one which consists with the function and nature of punitive damages in Illinois, is that which prohibits insurance under such circumstances. As was said early and perhaps best in *Northwestern National Casualty Co. v. McNulty* (5th Cir. 1962), 307 F.2d 432, 440-41, the leading case in the consideration of this issue,

> "The argument that insurance against punitive damages would contravene public policy is sometimes said to rest on the doctrine that 'no one shall be permitted to take advantage of his own wrong.' Mr. Justice Cardozo in Messersmith v. American Fidelity Co., 232 N.Y. 161, 133 N.E. 432, 19 A.L.R. 876 (1921). That doctrine is not necessarily applicable to cases of automobile liability insurance covering punitive damages. In such cases the public policy against coverage is not so much to prevent encouragement of wrong-doing by obstructing the hopes of profit; it is rather to make effective the discouragement of wrong-doing by the imposition of punishment. Where a person is able to insure himself against punishment he gains a freedom of misconduct inconsistent with the establishment of sanctions against such misconduct. It is not disputed that insurance against criminal fines or penalties would be void as violative of public policy. The same public policy should invalidate any contract of insurance against the civil punishment that punitive damages represent.
>
> The policy considerations in a state where, as in Florida and Virginia [the jurisdictions pertinent to the disposition of the case], punitive damages are awarded for punishment and deterrence, would seem to require that the damages rest ultimately as well [*sic*] nominally on the party actually responsible for the wrong. If that person were permitted to shift the burden to an insurance company, punitive damages would serve no useful purpose. Such damages do not compensate the plaintiff for his injury, since compensatory damages already have made the plaintiff whole. And there is no point in punishing the insurance company; it has done no wrong. In actual fact, of course, and considering the extent to

which the public is insured, the burden would ultimately come to rest not on the insurance companies but on the public, since the added liability to the insurance companies would be passed along to the premium payers. Society would then be punishing itself for the wrong committed by the insured."

The court in *McNulty* described the nature of the misconduct intended to be deterred by the imposition of punitive damages:

"The general lack of agreement on the meaning of the term 'punitive damages' impels us to define the scope of our holding in this case. First, by 'punitive damages' we mean damages awarded with a view to punish the defendant for irresponsible conduct and to deter the defendant and others from similar misconduct. The misconduct we have in mind is intentional or malicious wrongdoing, or, action or inaction having such a conscious disregard of others that a jury might fairly infer from the circumstances of aggravation that the wrong partakes of a criminal character, whether or not it is punishable as an offense against the state." (307 F.2d 432, 442.)

The line prohibiting the protection of insurance is drawn, as it should be, not between negligent conduct and intentional conduct, but between negligent conduct and the kind of unintentional conduct for which punitive damages may be imposed.

■■ ■ Our holding here that public policy prohibits insurance against liability for punitive damages that arise out of one's own misconduct does not affect the rule established in Illinois in *Scott v. Instant Parking, Inc.* (1969), 105 Ill. App. 2d 133, 245 N.E.2d 124, that an employer may insure himself against vicarious liability for punitive damages assessed against him in consequence of the wrongful conduct of his employee. As the court in *Scott* stated, "This case * * * involves only the right of a corporation to insure against liability caused by its agents and servants. There is no reasonable basis to declare the latter type insurance is against public policy." (105 Ill. App. 2d 133, 137, 245 N.E.2d 124, 126.) The court in *McNulty* considered the question of vicarious liability as well and came to the same conclusion, applying those principles upon which our decision today is based,

"In these cases a factor not always focused upon, yet of crucial importance, is the point that if the employer did not participate in the wrong the policy of preventing the wrongdoer from escaping the penalties for his wrong is inapplicable." (307 F.2d 432, 439-40.)

There is in *Scott* no indication that the employer had in any way, directly or indirectly, participated in the wrongful conduct of the employee for which punitive damages were assessed.

Because of our disposition of the public policy issue we need not

consider defendant's argument in the alternative with regard to the language of the policy itself.

Reversed.

KASSERMAN, P. J., and HARRISON, J., concur.