A & W ARTESIAN WELL CO.

v.

AETNA CASUALTY AND SURETY CO.

No. 80-472-Appeal.

Supreme Court of Rhode Island.

Aug. 19, 1983.

Joseph P. Carroll, Woonsocket, for plaintiff.

John F. Cuzzone, Jr., Quinn, Cuzzone, Geremia & Pennacchia, Samuel Miller, Providence, for defendant.

## OPINION

SHEA, Justice.

The plaintiff, A & W Artesian Well Co. (Artesian), brought this action under an insurance policy issued by the defendant, Aetna Casualty & Surety Co. (Aetna). The case was heard before a justice of the Superior Court and a jury. The jury returned a verdict for the plaintiff in the sum of $12,282.94. After the denial of its motion for a new trial, the defendant appealed to this court. We affirm.

The events that give rise to this lawsuit began on November 23, 1976. Artesian was the owner of a well-digging rig upon which Aetna issued a policy covering all risks including vandalism. The policy excluded from coverage damage caused by wear and tear, gradual deterioration, rust, and corrosion.

At trial, Alan Follett (Follett), executive vice president of Artesian, testified that on November 23, 1976, he received word that the well-digging rig at a job site in Mendon, Massachusetts, had broken down. Follett instructed the worker to contact the manufacturer, Ingersoll-Rand (Ingersoll), of Southboro, Massachusetts, for service. On November 24, a representative of Ingersoll removed the rig's compressor and brought it to their plant. After disassembling the compressor, they found foreign particles having the character of stone in the air intake. (The air intake is an integral part of the system that provides power for the drilling operation.) Ingersoll determined that the foreign particles had damaged the rotors and bearings and had caused the compressor's failure. Because the construction of the air intake would not permit particles of the size discovered during disas-

sembly to go through the screening unit covering the air intake opening, Ingersoll concluded that the stones had been intentionally introduced into the system by some unknown third person.

On receiving this report, Follett instructed Ingersoll to repair the unit because Artesian had to have the equipment operational as soon as possible. Since the machinery in question was damaged beyond repair, Ingersoll ordered a rebuilt replacement compressor, and this replacement was installed on the rig on December 7, 1976.

In mid-December, Follett notified Aetna's agent of a possible vandalism claim. Ingersoll's repair bill in the amount of $12,282.94 was forwarded to plaintiff on December 29, 1976. At approximately the same time, two oil samples taken from the compressor were forwarded to the Texaco Oil Company Laboratory in Texas for analysis. It is not clear from the record, however, who ordered that these samples be taken. On or about January 21, 1977, Follett sent Ingersoll's repair bill to the agent with instructions to process a vandalism claim. The actual notice of loss, however, did not leave the agent's office until January 26, 1977.

On January 27, 1977, a claims adjuster was assigned by Aetna to investigate the claim. The adjuster contacted Follett and learned that the repairs had been completed and that the rig at that time was in New Hampshire at another job site. Follett referred the adjuster to the general manager at Ingersoll for further information. Ingersoll's manager informed the adjuster that in accordance with the company's exchange program under which Ingersoll would exchange damaged equipment for new parts, the damaged parts of the compressor had been shipped to Ingersoll's factory in North Carolina where they would be scrapped. The adjuster was advised to contact that facility regarding the disposition of those parts. In addition, arrangements were made for the adjuster and Aetna's claims supervisor to view the filtration system on an identical rig at Ingersoll's plant. There, it was demonstrated how the air

filter mechanism could be dismantled, the stones could be induced into the chamber, and the unit then reassembled, a process that could be completed in approximately five to ten minutes.

Meanwhile, the adjuster obtained a copy of the oil-sample analysis. This report showed a high concentration of rust and no evidence of any foreign matter. Relying on the oil sample, the adjuster theorized that it was more likely that plaintiff had improperly maintained the equipment than that the machinery had been vandalized. His final investigative report was forwarded to Aetna on February 19, 1977. It cited "failure in the lubricating oil" as the cause of the damage to the compressor. On June 3, 1977, Aetna notified Artesian it was disallowing the claim for two reasons: (1) the damage had been caused by normal wear and tear and not vandalism, and (2) because Artesian had failed to comply with the policy provisions requiring timely notice, preservation of the damaged equipment for inspection, and filing of a sworn proof of loss within ninety (90) days.

Before this court, Aetna contends that the trial justice erred in denying its motion for a new trial. It specifically argues that the trial justice's findings that defendant was not prejudiced by plaintiff's technical breaches of the insurance contract were erroneous. Aetna concedes that failure to file timely notice, in and of itself, does not bar recovery. It maintains, however, that the insured's failure to comply with the notice requirements coupled with its failure to comply with the inspection clauses constitutes prejudice as a matter of law, thereby relieving it of liability to its insured. We disagree.

In *Pickering v. American Employer Insurance Co.*, 109 R.I. 143, 282 A.2d 584 (1971), this court held that a technical breach of notice provisions in an insurance contract does not bar an insured from recovering on the policy. Rather, the carrier must show that it was prejudiced thereby. *Id.* at 160, 282 A.2d at 593. The rule in *Pickering* was later reaffirmed in *Siravo v.*

*Great American Insurance Co.,* R.I., 410 A.2d 116 (1980). In *Pickering,* we indicated that the court should look to the length of delay, the reasons for the delay, and the probable effect of the delay on an insurer in determining such prejudice. *Pickering v. American Employer Insurance Co.,* 109 R.I. at 159, 282 A.2d at 593.

Applying this test to the instant case, the trial justice accepted the testimony of plaintiff and its witnesses that although the notice of loss did not leave the agent's office until late January, defendant's agent had been put on notice of this claim as early as December. In considering the reason for the delay, the court noted that however speculative the explanation might be, the delay could have been caused by plaintiff's desire to wait until it had received a copy of the oil-sample results from Texas. On the evidence before the court, the trial justice found that plaintiff had acted in a reasonably prudent manner.

Finally, in evaluating the effect of the delay, the court found evidence that Aetna had been afforded an opportunity to conduct a meaningful investigation. He discussed the evidence establishing that Aetna had received a report and had been given an opportunity to examine an identical piece of equipment. Representatives of Aetna had been given a demonstration of how the stones could have been intentionally introduced into the system. He further found that plaintiff had no part in directing that the damaged parts be sent to North Carolina. Also, he said, there was credible testimony that the damage to the equipment would have looked the same whether caused by wear and tear or by a foreign substance.

The defendant has not persuaded us that in ruling on the motion for a new trial, the trial justice failed to perform the duties required of him as set forth in *Labrecque v. Branton Yachts Corporation,* R.I., 457 A.2d 617 (1983); *Barbato v. Epstein,* 97 R.I. 191, 196 A.2d 836 (1964). In *Barbato,* we said that it is the duty of the trial justice to examine and weigh the evidence independently and to pass on the credibility of the witnesses. *Id.* at 193, 196 A.2d at 837. Since the defendant failed to demonstrate that the trial justice overlooked or misconceived any material evidence on a controlling issue or was otherwise clearly wrong, we affirm his denial of the motion for new trial.

The defendant's appeal is denied and dismissed, the judgment of the Superior Court is affirmed, and the case is remanded to the Superior Court for further proceedings.