**PROVIDENCE WASHINGTON INSURANCE COMPANY OF ALASKA, Appellant,**

v.

**CITY OF VALDEZ, Mark Lewis, John Does 1–10 and Joe Doe Corporations 1–10, Appellees.**

No. 7892.

Supreme Court of Alaska.

July 20, 1984.

Robert C. Erwin, Erwin, Smith & Garnett, Anchorage, for appellant.

Kenneth P. Jacobus, Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, for appellees City of Valdez and Mark Lewis.

Before BURKE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Justice.

Arctic Coast Fisheries, Inc. (Arctic) sued the City of Valdez for wrongfully terminating a lease of a city building to Arctic for use as a fish processing plant. Arctic sought both compensatory and punitive damages. Thereafter Providence Washington Insurance Co. (Providence), the insurance carrier for Valdez, instituted a declaratory judgment action against Valdez, seeking a declaration that the liability insurance policy it had issued to Valdez did not cover punitive damages. Both Providence and Valdez moved for summary judgment.[1] The superior court granted summary judgment in favor of Valdez, holding that punitive damages came within the coverage of the City's policy. This appeal followed.

### I.  Scope of Insurance Coverage

In its motion for summary judgment, Providence conceded that the personal injury provisions of the policy, not the property damage provisions, were controlling. The relevant portions of the personal injury provisions read as follows:

> The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury (herein called "personal injury") sustained by any person or organization and arising out of one or more of the following offenses committed in the conduct of the named insured's business:
>
> ....
>
> GROUP C—wrongful entry or eviction, or other invasion of the right of private occupancy; ...

■ Since Arctic's complaint against Valdez alleged wrongful eviction, the quoted language of the policy covers damages awarded against Valdez in that suit.[2] In its motion for summary judgment and in its reply brief, Providence argued that because punitive damages are awarded not to compensate a plaintiff for injury, but rather to punish a defendant, such damages are not "payable because of personal injury arising out of an offense ...."[3] We reject Providence's position and hold that the su-

---

1. While the summary judgment motions were pending, the superior court in Arctic's suit against Valdez ruled that the evidence did not support an award of punitive damages, and dismissed Arctic's claims for punitive damages. Arctic's case then proceeded to trial. The jury returned a verdict for $5,500,000 in compensatory damages. The superior court upheld the jury verdict against Valdez' motions for judgment N.O.V., remittitur, or new trial. Valdez then appealed the judgment, and Arctic cross-appealed, claiming *inter alia* that the superior court erred in dismissing its claim for punitive damages. Since Arctic could prevail in its cross-appeal, and ultimately win an award of punitive damages against Valdez, the case before this court is not moot. The parties have adverse

interests of sufficient immediacy to warrant our consideration of this declaratory judgment action. *See Jefferson v. Asplund,* 458 P.2d 995, 999 n. 20 (Alaska 1969), *quoting; Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826, 828–29 (1941).

2. The contract also provides an additional definition:

   "damages" means only those damages which are payable because of personal injury arising out of an offense to which this insurance applies.

3. Providence relies on *Cavin's Inc. v. Atlantic Mut. Ins. Co.,* 27 N.C.App. 698, 220 S.E.2d 403 (1974), where the court distinguished compensa-

perior court correctly ruled that the policy in question covered punitive damages.

■ The policy required Providence to "pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages" arising out of insured's wrongful eviction or other invasion of the right of private occupancy. In our opinion these provisions are unambiguous. Providence's stated obligation to pay includes "all sums". Punitive damages, where reduced to judgment, constitute a "sum" that the insured is obligated to pay as a result of its wrongful eviction. Under the terms of the policy Providence has not specifically excluded punitive damages. We therefore conclude that the liability policy Providence issued to Valdez provides coverage for punitive damages.[4]

## II. *Public Policy Considerations*

■ The purpose of punitive damages is twofold: to punish the wrongdoer and to deter the wrongdoer and others like him from repeating the offensive act.[5] Assuming, without deciding, that public policy in Alaska would prohibit liability insurance

coverage for punitive damages,[6] we hold that such a policy would not prohibit municipal corporations from insuring against punitive damage awards.[7] Such awards are incurred in the performance of public functions and, if uninsured, would fall on the innocent taxpayers. Further, where the liability is vicarious, or the defendant is a governmental entity, there exists a considerable body of decisional authority to the effect that liability insurance coverage of punitive damage awards is allowed.[8] We view this exception to the general prohibition against insurance coverage of punitive damages as a sound one and find the rule an appropriate basis for the disposition of this issue on appeal.

The superior court's summary judgment holding that punitive damages are covered under the liability insurance policy which Providence issued to Valdez is . AFFIRMED.

COMPTON, Justice, dissenting.

Generally, a declaratory judgment action is considered a proper vehicle for settling questions concerning the scope of insur-

---

tory and punitive damages in construing a policy substantially identical to Valdez' to exclude coverage for the latter. Valdez points out that the *Cavin's* decision stands alone in its holding.

4. *See Ridgway v. Gulf Life Ins. Co.,* 578 F.2d 1026 (5th Cir.1978); *Dayton Hudson Corp. v. American Mutual Liability Ins. Co.,* 621 P.2d 1155 (Okla.1980); *Harrell v. Travelers Indemnity Co.,* 279 Or. 199, 567 P.2d 1013 (1977).

5. *Sturm, Ruger & Co., Inc. v. Day,* 594 P.2d 38, 47 (Alaska 1979), *cert. denied,* 454 U.S. 894, 102 S.Ct. 391, 70 L.Ed.2d 209 (1981); Restatement (Second) Torts § 908 (1977); *see also, e.g., Northwest Nat'l Casualty Co. v. McNulty,* 307 F.2d 432 (5th Cir.1962).

6. According to the parties' briefs, approximately thirteen jurisdictions follow the rule that it is against public policy to cover punitive damages by insurance, with seventeen jurisdictions finding no such public policy prohibitions. *See generally* Annot., 16 A.L.R. 4th 11 (1982).

7. We decline to address the question argued by both parties to this appeal of whether punitive damages are recoverable against municipalities in Alaska; we prefer to await a more adversarial presentation of this issue. Thus, for purposes

of deciding whether it would be contrary to public policy to permit municipalities to insure against punitive damages, we make the further assumption that in Alaska punitive damages are recoverable against municipalities. .

8. The following cases recognize that a vicariously liable defendant should be permitted insurance coverage of punitive damages awarded against him/her: *Grant v. North River Ins. Co.,* 453 F.Supp. 1361 (N.D.Ind.1978); *Hartford Accident & Indemnity Co. v. U.S. Concrete Pipe Co.,* 369 So.2d 451 (Fla.App.1979); *Beaver v. Country Mutual Ins. Co.,* 95 Ill.App.3d 1122, 51 Ill.Dec. 500, 420 N.E.2d 1058 (1981); *Continental Ins. Co. v. Hancock,* 507 S.W.2d 146 (Ky.1973); *LoRocco v. N.J. Manufacturers Indemnity Ins. Co.,* 82 N.J.Super. 323, 197 A.2d 591 (1964); *Dayton Hudson Corp. v. American Mutual Liability Ins. Co.,* 621 P.2d 1155 (Okla.1980). *See* Annot., 16 A.L.R. 4th 11, 25–27 (1982) for additional cases.

The following cases reach a similar conclusion regarding municipal or public defendants: *Harris v. County of Racine,* 512 F.Supp. 1273 (E.D.Wis.1981); *Fagot v. Ciravola,* 445 F.Supp. 342 (E.D.La.1978); *Schwab v. First Appalachian Ins. Co.,* 58 F.R.D. 615 (S.D.Fla.1973); *City of Cedar Rapids v. Northwestern Nat. Ins. Co.,* 304 N.W.2d 228 (Iowa 1981); *Colson v. Lloyd's of London,* 435 S.W.2d 42 (Mo.App.1968).

ance coverage. 10 *Federal Procedure, Lawyers Edition* §§ 23:21, 23:22 (1982). However, even a declaratory judgment proceeding must be based on an actual controversy rather than a hypothetical state of facts. *Id.* at 23:17. Whether a question is advisory often boils down to a judgment call as to "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Jefferson v. Asplund*, 458 P.2d 995, 999 n. 20 (Alaska 1969) *quoting Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826, 828–29 (1941).

Here, Providence's potential liability for punitive damages assessed against Valdez is affected by a number of hypotheticals, including whether Valdez may and will ultimately be held liable for punitive damages. Nevertheless, in light of the general rule that an insurance company need not wait for a judgment to be rendered against its insured before contesting the existence and extent of its own liability, 10 *Federal Procedure, Lawyers Edition* § 23:22 (1982), an actual controversy can possibly be said to exist in this case.

The above notwithstanding, a finding that the question presented here is neither advisory nor moot does not end the inquiry. The basic question remains whether in this particularly case the issue is an appropriate one for declaratory judgment. I believe on balance that it is not, and that the lower court abused its discretion in granting relief. A court should be wary of basing decisions on hypothetical questions of law even more than on hypothetical questions of fact.

This court prefers to wait for a more adverse representation to decide the issues of whether municipal corporations may be sued for punitive damages and whether

public policy generally precludes insuring against them. Therefore, it seems extremely premature to decide that Valdez would nevertheless be able to insure against such damages and that the insurance policy at issue here in fact covered them. Even if a decision here would not be advisory or moot, the court would nevertheless "fear for its own carelessness in acting when nothing seems to be at stake." 13 C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* § 3533 at 266 (1975).

The parties have not demonstrated any harm that would befall them if the court withheld a decision at this time.[1] Although the court's construction of the contract may serve to clarify in a narrow sense the legal relations in issue, *Jefferson v. Asplund*, 458 P.2d at 998, the dangers involved in deciding secondary questions of law before primary ones would seem to outweigh the potential utility of a declaratory judgment in this case.

---

1. At oral argument the parties seemed principally interested in getting the court to decide the underlying question of whether punitive damages can ever be assessed against a city, which the court is unwilling to do. Valdez also argued that a decision was needed to resolve a dispute over attorney's fees, but Providence conceded that defense costs were not apportionable and that, whatever the court's decision on the question of punitive damages, it was obligated to defend every charge.