CITY OF FORT PIERRE, a municipal corporation, Plaintiff and Appellee,

v.

UNITED FIRE AND CASUALTY COMPANY, Defendant and Appellant.

Nos. 16907, 16936.

Supreme Court of South Dakota.

Argued April 23, 1990.

Reassigned Aug. 9, 1990.

Decided Dec. 5, 1990.

David A. Gerdes of May, Adam, Gerdes & Thompson, Pierre, for defendant and appellant.

Laurence J. Zastrow, Pierre, for plaintiff and appellee.

MILLER, Chief Justice (on reassignment).

United Fire & Casualty Company (United) appeals a circuit court judgment hold-

ing it liable for the costs and expenses incurred by the City of Ft. Pierre (City) in defending an action brought against City by the federal government.

## FACTS

United issued a public officials errors and omissions insurance policy to City. Under this policy United agreed:

> To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay on account of any claim made against the Insured *except* as hereinafter limited and caused by any *negligent act, error or omission* of the Insured or any other person for whose acts the Insured is legally liable in the conduct of his duties as the public official holding the office shown in the Declarations. (Emphasis added.)

The policy specifically excluded coverage for "injury to or destruction of any tangible property including loss of use thereof;" and "liability for any loss caused *intentionally* by or *at the direction* of the Insured." (Emphasis added.) City was required to give United notice "[a]s soon as practicable" after City became aware of any negligent act, error or omission, and to "immediately forward" every summons or other process if suit was brought against City.

On March 18, 1980, City applied to the United States Army Corps of Engineers (Corps) for a permit under Section 404 of the Clean Water Act of 1977, 33 U.S.C. § 1344 (1988), to construct a roadway across a slough. The land involved, commonly known as the Ft. Pierre slough, lies between U.S. Highway 83 and the Missouri River, within the boundaries of City. The Corps then issued public notice of the application and invited public comments on it. The United States Fish & Wildlife Service (FWS) and the Environmental Protection Agency (EPA) both responded and recommended that the application be denied. City failed to respond to either the FWS or the EPA objections to the issuance of the permit.

On August 4, 1980, City began construction of the roadway in question, without the benefit of a permit. The City used 6,481 cubic yards of fill material to construct the 700 feet by 5 feet deep and 50 feet wide road. Thereafter, the Corps notified City by certified mail that these actions violated the Clean Water Act. The Corps further notified City that it must cease and desist in its actions.

On August 14, 1980, City began construction of a second roadway across the slough. This time, City placed 18,500 cubic yards of shale loam in the slough to construct a 2,000 feet by 5 feet deep and 50 feet wide roadway. City did not apply for nor did it receive a permit for the construction of the second roadway.

On July 29, 1981, the United States Government brought suit against City, alleging that it violated the Clean Water Act by discharging fill material into protected wetland waters without a permit. City had constructed the roadways based upon the advice of its attorney[1] that the slough was not a wetland area within the meaning of the Clean Water Act, thereby making a permit unnecessary. In its lawsuit, the United States sought to (1) permanently enjoin City from conducting any future fill activity without a permit; (2) to require City to perform restoration and erosion control work on that part of the slough already affected; and (3) to impose civil penalties in an amount not to exceed $10,000 for each day of violation.

City did not notify United about the lawsuit or request defense of the action until February 3, 1983. The delay in notification was evidently due to oversight of City or its former attorney regarding the existence of the insurance policy. United responded by informing City it would not defend the action because it believed the lawsuit was not covered by the policy.

Trial of the federal action commenced in the United States district court on August 31, 1983, and a decision was rendered December 30 of that year. The trial court ruled in favor of the United States. *United States v. City of Ft. Pierre, South Dakota,* 580 F.Supp. 1036 (D.S.D.1983).

1. City's attorney at that time is not involved in this litigation.

City appealed to the Eighth Circuit Court of Appeals and, in October of 1984, that court reversed the district court's decision, concluding that the slough was not a protected wetland under the Clean Water Act. *United States v. City of Ft. Pierre, South Dakota*, 747 F.2d 464 (8th Cir.1984). City's legal fees defending the federal lawsuit totaled $28,445.56, $16,618.49 of which was incurred after United was notified of the action.

City ultimately brought this suit against United seeking to recover its legal fees and expenses incurred in defending the federal lawsuit. United answered, asserting that it was not obligated to provide a defense because City's conduct at issue in the federal lawsuit was outside the coverage of the insurance policy. The circuit court concluded that defense of the federal lawsuit was within the coverage of the policy, thereby entitling City to recover the costs and expenses it incurred after United was notified of the lawsuit. United appeals, claiming that the circuit court erred in concluding that the conduct alleged in the federal lawsuit was within policy coverage and that the delayed notification did not preclude coverage. By notice of review, City claims the circuit court erred in requiring United to pay only the expenses incurred after notification, rather than all legal defense expenses.

We reverse, holding that United had no duty to defend under the policy.

## ISSUE I

WHETHER UNITED HAD A DUTY TO DEFEND WHEN THE ERRORS AND OMISSIONS POLICY SPECIFICALLY EXCLUDED INTENTIONAL CONDUCT.

Insurance may protect the insured from the consequence of his negligent acts, errors and omissions. 13A G. Couch, Couch on Insurance § 48:166 (2nd ed. 1982). Errors and omissions policies are a hybrid form of insurance coverage. It guards against loses arising to the insured, as well as liabilities arising on the part of the insured, by reason of errors or omissions. 9 J. Appleman, Insurance Law & Practice § 5256 (1981). An errors and omissions policy provides a specialized and limited type of insurance coverage. *Grieb v. Citizens Cas. Co. of N.Y.*, 33 Wis.2d 552, 148 N.W.2d 103 (1967).

Here, the coverage included in the policy was for "any negligent act, error or omission" of City. The policy further *excluded* "injury to or destruction of any tangible property" or "liability for any loss caused *intentionally* or *at the direction* of the insured." (Emphasis added.) The duty of an insurance company to defend its insured is determined by the allegations of the complaint and the action brought against the insured. *Bayer v. Employers Reinsurance Corp.*, 383 N.W.2d 858, 860 (S.D.1986); *U.S. Fidelity & Guaranty Co. v. Louis A. Roser Co.*, 585 F.2d 932, 936 (8th Cir.1978).

The complaint brought by the United States alleged that the City *intentionally* violated the Clean Water Act. The prayer for relief sought injunction and civil penalties. In a letter to City's Mayor from the Corps of Engineers, City's continued construction of a road in the absence of a permit was characterized as a "willful and flagrant violation of federal statutes." The federal government never alleged that City's conduct was negligent or the result of some error or omission. (Obviously, City believed that the federal government's classification of this "wetland" was incorrect and so it continued to build a roadway without a federal permit. City's belief was later determined to be legally correct since the United States Court of Appeals, Eighth Circuit, held that the slough was not a wetland.)

The burden of showing no duty to defend rests on the insurer. *Hawkeye-Security Ins. Co. v. Clifford*, 366 N.W.2d 489, 492 (S.D.1985). The insurer must show the claim clearly falls outside of policy coverage. *Id.* If, after considering the complaint, and when appropriate, other record evidence, doubt exists whether the claim against the insured arguably falls within the policy coverage, such doubts must be resolved in favor of the insured. *Id.*

In *Black Hills Kennel Club v. Firemens' Fund Indemnity Co.*, 77 S.D. 503, 506–507, 94 N.W.2d 90, 92 (1959), we noted that:

The scope of liability insurance is determined from the contractual intent and objectives of the parties as expressed in the policy. We are mindful of the rule of construction that where the provisions of an insurance contract are not clear and are fairly susceptible of different interpretation that one most favorable to the insured should be adopted. This rule does not mean, however, that the court may seek out a strained or unusual meaning for the benefit of the insured. Insurers may assume some risks and exempt themselves from liability for others.

(Citations omitted.) The federal government's lawsuit arose *exclusively* because City decided to *intentionally* ignore the government's permit requirements. City made a knowing, conscious decision to construct the roadway, being fully aware that the federal government would require an application for a permit (in fact, City ultimately applied for such a permit). This is not conduct which is negligent or an error or omission. Thus, United had no duty to defend under the policy. *See Continental Casualty Co. v. Richmond,* 763 F.2d 1076 (9th Cir.1985). *Black Hills Kennel Club, supra.*

## ISSUE II

WHETHER THE FEDERAL LITIGATION WHICH SOUGHT CIVIL PENALTIES CONSTITUTED A SUIT FOR "DAMAGES" UNDER THE INSURANCE POLICY, REQUIRING UNITED TO DEFEND CITY.

■ United contends that the circuit court erred in concluding that the civil penalties requested by the United States in the federal lawsuit were not excluded from coverage under the policy. United asserts that a civil penalty is not covered by the policy because such penalties are punitive in nature and public policy prevents insurance coverage for punitive damages.

The terms of the insurance contract required United "[t]o pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay on account of any claim made against the Insured...." However, this language is limited by the exclusions in the policy.

As stated earlier, the federal government's complaint alleged nothing which could be characterized as a negligent act, nor as an error or omission.[2] It brought an injunction action with *possible* civil penalties as a consequence. The civil penalties prayed for by the federal government were punitive in nature and not a request for compensatory damages. *United States v. Edwards,* 667 F.Supp. 1204, 1213–15 (W.D. Tenn.1987). The civil penalty, in connection with the injunctive relief, is often included to motivate the alleged wrongdoer to quick action, as well as for punishment, or a combination thereof. Punitive damages are not compensatory but are in addition to compensatory damages.

■ Although there is a split in authority, as a general rule, it is against public policy to allow the insured wrongdoer to shift the burden of payment of punitive damages to its insurer.[3] Two interests implicated by an award of punitive damages are punishment to the wrongdoer and de-

---

**2.** Note that this is distinguishable from the situation wherein the language of the insurance policy covers the underlying liability, as was presented in *Providence Washington Ins. Co. of Alaska v. City of Valdez,* 684 P.2d 861 (Alaska 1984). Here, the language of the insurance policy specifically excludes coverage of the underlying liability, thus *Valdez* is distinguishable.

**3.** *Rossman v. State Farm Mut. Auto. Ins. Co.,* 832 F.2d 282 (4th Cir.1987); *Northwestern Nat'l. Cas. Co. v. McNulty,* 307 F.2d 432 (5th Cir.1962); *City Prod. Corp. v. Globe Indem. Co.,* 88 Cal.App.3d 31, 151 Cal.Rptr. 494 (1979); *U.S. Concrete Pipe*

*Co. v. Bould,* 437 So.2d 1061 (Fla.1983); *Beaver v. Country Mut. Ins. Co.,* 95 Ill.App.3d 1122, 1125, 51 Ill.Dec. 500, 420 N.E.2d 1058 (1981); *Crull v. Gleb,* 382 S.W.2d 17 (Mo.Ct.App.1964); *LoRocco v. N.J. Mfr. Indem. Ins. Co.,* 82 N.J. Supr. 323, 197 A.2d 591 (1964); *Hartford Acc. & Indem. Co. v. Village of Hemstead,* 48 N.Y.2d 218, 422 N.Y.S.2d 47, 397 N.E.2d 737 (1979); *Casey v. Calhoun,* 40 Ohio App.3d 83, 531 N.E.2d 1348 (1987); *Dayton Hudson Corp. v. American Mut. Liab. Ins. Co.,* 621 P.2d 1155 (Okla.1980); *Esmond v. Liscio,* 209 Pa.Super. 200, 224 A.2d 793 (1966); 15A G. Couch, Couch on Insurance § 56.9. *See also Union L.P. Gas Sy., Inc. v.*

terrence of the wrongdoer's conduct. Here, City committed the "wrong" and is attempting to shift responsibility for its actions to its insurer. To allow City to do so would allow it to act with impunity. City would not be punished, nor would it be deterred from similar actions. "Were a person able to insure himself against economic consequences of his intentional wrongdoing, the deterrence attributable to financial responsibility would be missing." *Ambassador Ins. Co. v. Montes*, 76 N.J. 477, 483, 388 A.2d 603, 606 (1978).

Thus, because we have determined that the civil penalties prayed for by the federal government were punitive in nature and that in this instance the award of punitive damages would violate public policy, we hold that United had no duty to defend City under the policy.

We have considered the other issues raised and find them to be without merit or moot.

The judgment of the trial court is reversed.

WUEST and MORGAN, JJ., concur.

HENDERSON and SABERS, JJ., dissent.

SABERS, Justice (dissenting).

I dissent.

1. *United had a duty to defend.*

The scope of insurance policy coverage is determined from the contractual intent and objectives of the parties as expressed by the policy language. *See Black Hills Kennel Club, Inc. v. Fireman's Fund Indem. Co.*, 77 S.D. 503, 94 N.W.2d 90 (1959). An insurance contract's language is to be construed according to its plain and ordinary meaning. *Grandpre v. Northwestern Nat'l Life Ins. Co.*, 261 N.W.2d 804 (S.D. 1977).

The City's policy from United covers "any claim made against the Insured ... caused by any ... error ... of the Insured," and United is obligated to defend "any suit against the Insured alleging such ... error ... and seeking damages on account thereof[.]" The plain and ordinary meaning of error is: "A mistaken judgment or incorrect belief as to the existence or effect of matters of fact, or a false or mistaken conception or application of the law." Black's Law Dictionary 487 (5th ed. 1979). Accordingly, the policy covers any claims against the City that are the result of the City's mistaken judgment as to a matter of fact.

An insurer must defend its insured in an action brought against the insured if the pleadings in the action allege facts that, if true, fall within the policy's coverage. *Bayer v. Employers Reinsurance Corp.*, 383 N.W.2d 858 (S.D.1986). The insurer bears the burden of showing that it has no duty to defend the action because it clearly falls outside the policy coverage. *Hawkeye–Security Ins. Co. v. Clifford*, 366 N.W.2d 489 (S.D.1985). Therefore, United has a duty to defend any claim against the City that alleges facts that are the result of the City's mistaken judgment as to a matter of fact.

The United States action against the City alleged the City discharged fill into a protected wetland without a permit. If those facts were true, the claim by the United States against the City would be caused by the City's mistaken judgment as to a matter of fact, i.e., the slough's status as a protected wetland. The mistaken judgment would have been the City's belief that the slough was not a protected wetland, making a permit unnecessary. Indeed, in its brief, United acknowledged that the City proceeded without a permit because

International Surplus Lines Ins. Co., 869 F.2d 1109 (8th Cir.1989); *Creed v. Allstate Ins. Co.*, 365 Pa.Supr. 136, 529 A.2d 10 (1987); *Contra Skyline Harvestore Sys. Inc. v. Centennial Ins. Co.*, 331 N.W.2d 106 (Iowa 1983); *Creech v. Aetna Cas. & Sur. Co.*, 516 So.2d 1168 (La.App. 1987) *writ denied* 519 So.2d 128 (La.1988); *Harrell v. Travelers Indem. Co.*, 279 Or. 199, 567 P.2d 1013 (1977); *First Bank (NA)–Billings v.*

*TransAmerica Ins. Co.*, 209 Mont. 93, 679 P.2d 1217 (1984); *Mazza v. Medical Mut. Ins. Co.*, 311 N.C. 621, 319 S.E.2d 217 (1984); *American Home Assur. Co. v. Safway Steel Prods. Co., Div. of Figgie Int'l Inc.*, 743 S.W.2d 693 (Tex.App. 1987); *United Serv. Auto. Ass'n. v. Webb*, 235 Va. 655, 369 S.E.2d 196 (1988); *Sinclair Oil Co. v. Columbia Casualty Co.*, 682 P.2d 975 (Wyo. 1984).

"the City felt that the United States government's classification of the slough as a 'wetland' was incorrect." Consequently, contrary to the majority's conclusion, the federal lawsuit fell within the policy's general coverage, or, at a minimum, does not *clearly* fall outside the policy coverage.

### 2. *Exclusion for intentional loss does not apply.*

An insurance policy exclusion for a loss caused intentionally by an insured applies only when the insurance company is able to show that the insured acted for the purpose of causing the loss. *See Rajspic v. Nationwide Mut. Ins. Co.*, 110 Idaho 729, 718 P.2d 1167 (1986); *Horace Mann Ins. Co. v. Independent School Dist. No. 656*, 355 N.W.2d 413 (Minn.1984). That is, the loss itself must be intended before the exclusion will apply. As explained by the court in *Allstate Ins. Co. v. Steinemer*, 723 F.2d 873 (11th Cir.1984):

> Under the majority rule the exclusion applies if the insured intended to do a particular act, and intended to do some harm, even if the harm actually done was radically different from that intended.... On the other hand, an "intentional injury" exclusion will not apply if the insured intentionally does an act, but has no intent to commit harm, even if the act involves the foreseeable consequences of great harm or even amounts to gross or culpable negligence.

*Id.* at 875 (citation omitted); *see also Farmers Ins. Group v. Sessions*, 100 Idaho 914, 918, 607 P.2d 422, 426 (1980) ("We follow the great weight of authority and hold that for this 'intentional tort' exclusion to operate the insurance company must be able to show that its insured acted ... for the purpose of causing injury in the person or property in which it resulted."). This rule was applied by the Oklahoma Supreme Court in a case involving policy language almost identical to that at issue here. In *Lumbermens Mut. Ins. Co., Mansfield, Ohio v. Blackburn*, 477 P.2d 62, 64 (Okl. 1970), the court considered an exclusion for "bodily injury or property damage caused intentionally by or at the direction of the

Insured" (emphasis omitted), and concluded:

> [T]he majority of the better-reasoned opinions in cases involving insurance policy exclusion provisions with language like the one involved here, or wording of similar import, require that the intention of the person, whose act caused the injury, 'must be to inflict the injury actually inflicted....'

*Id.* at 65. In short, the intention must be to cause the loss as well as to do the act.

The trial court found that the City's actions were not undertaken with any intent to cause a loss. As the trial court explained: "The City was only doing that which it believed it had a right to do within the law." Although the City acted intentionally to discharge the fill material into the Ft. Pierre slough, it did not intend to cause any harm by that conduct. The City did not intend to wrongfully discharge the fill without a necessary permit, because it believed a permit was not necessary. In fact, the City was correct in so thinking and the 8th Circuit Court of Appeals so held. Contrary to the majority's conclusion, the exclusion for intentional loss does not apply to this case.

### 3. *The civil penalty is not punitive in nature.*

The majority holds that a civil penalty is not covered by the policy because a civil penalty is punitive in nature and public policy prevents insurance coverage for punitive damages.

Before punitive damages may be awarded, malice on the part of the party from whom the punitive damages are sought must be shown. *Yankton Prod. Credit Ass'n v. Jensen*, 416 N.W.2d 860 (S.D. 1987). No similar requirement exists for the imposition of the civil penalty. Therefore, the civil penalty the United States sought to have imposed upon the City of Ft. Pierre cannot be equated to punitive damages.

Moreover, the civil penalty falls within the policy coverage as set forth by the plain and ordinary meaning of the policy's language. The policy requires United to pay "all sums which the insured shall be-

come legally obligated to pay on account of any claim made against the insured." If a civil penalty had been assessed against the City as a result of the federal lawsuit, the penalty would constitute a "sum" the City would be legally obligated to pay on account of a claim made against the City.*

### 4. Other Issues.

Although the majority does not reach these issues, United also claims coverage should be denied because the policy expressly excludes coverage for injury to tangible property, and because the City failed to promptly notify United of the federal lawsuit.

It is not necessary to address the tangible property damage exclusion because if *any* claim of a cause of action against an insured falls within policy coverage, then the insurer must defend all claims. *See First Newton Nat'l Bk. v. General Casualty Co. of Wisconsin,* 426 N.W.2d 618 (Iowa 1988); *Reurink Bros. Star Silo, Inc. v. Maryland Casualty Co.,* 131 Mich.App. 139, 345 N.W.2d 659 (1983); *Senger v. Minnesota Lawyers Mut. Ins. Co.,* 415 N.W.2d 364 (Minn.App.1987). Since United was obligated to defend the City based upon the civil penalty, it was obligated to defend the other claims as well.

As to the delayed notification issue, this court has not previously ruled on the effect of an insured's failure to promptly advise an insurer of a covered liability. However, the better and more modern view among the states which have addressed the issue is:

> An unexcused delay by the insured in giving notice to the insurer of [a loss] does not relieve the insurer of its obligation to defend and indemnify unless the delay operates materially to prejudice the insurer's ability to investigate and defend.

*Great American Ins. Co. v. C.G. Tate Constr. Co.,* 303 N.C. 387, 390, 279 S.E.2d 769, 771 (1981); *accord Johnson Controls, Inc. v. Bowes,* 381 Mass. 278, 409 N.E.2d 185 (1980); *Brakeman v. Potomac Ins.*

*Co.,* 472 Pa. 66, 371 A.2d 193 (1977); *A & W Artesian Well Co. v. Aetna Cas. & Sur. Co.,* 463 A.2d 1381 (R.I.1983); *Reliance Ins. Co. v. St. Paul Ins. Companies,* 307 Minn. 338, 239 N.W.2d 922 (1976).

The traditional position, that the failure to strictly comply with notice requirements releases an insurer from its obligation to defend and indemnify an insured, is based on the inaccurate and outdated view that insurance policies are private contracts in the traditional sense. As the Pennsylvania Supreme Court has explained:

> Such a position fails to recognize the true nature of the relationship between insurance companies and their insureds. An insurance contract is not a negotiated agreement; rather its conditions are by and large dictated by the insurance company to the insured.

*Brakeman* 371 A.2d at 196. The North Carolina Supreme Court echoed this sentiment when it stated:

> The terms of an insurance contract are not bargained for in the traditional sense. Insurance policies are offered on a take-it-or-leave-it basis and, frequently, the only term over which the insured has any say is the amount of coverage.

*Great American,* 279 S.E.2d at 774.

The modern view of notice requirements focuses on the purpose for the requirement and realizes that it is not to provide a technical escape hatch to allow the insurance company to deny coverage. The modern view does not belittle the need for notice to the insurer, but instead puts the notice requirement in its proper perspective. "The clear purpose of the notice provision is to protect the ability of the insurer to prepare a viable defense by preserving its ability fully to investigate the accident." *Great American,* 279 S.E.2d at 775. In other words, notice requirements are included in insurance contracts to protect the insurance company's interest from being prejudiced. If delayed notification has not prejudiced the insurer's ability to defend a claim, then there is no reason to strictly

---

* We also note that the Alaska Supreme Court concluded that punitive damages are covered under a policy using the same language as that used by United. *Providence Washington Ins. Co. of Alaska v. City of Valdez,* 684 P.2d 861 (Alaska 1984).

enforce the notice requirement. As the court explained in *Brakeman*, 371 A.2d at 197:

Where the insurance company's interests have not been harmed by a late notice, even in the absence of extenuating circumstances to excuse the tardiness, the reason behind the notice condition in the policy is lacking, and it follows neither logic nor fairness to relieve the insurance company of its obligation under the policy in such a situation.

Under the facts of this case, United has not been prejudiced. The City's defense of the federal lawsuit was effective, so United is not obligated to pay any judgment. Instead, the City is simply requesting its legal defense costs which United would have incurred even if the notification had been prompt. Therefore, since the delayed notification had no adverse effect upon United's ultimate liability, they cannot claim to have been prejudiced by the delayed notification.

Finally, by notice of review, the City claims the trial court erred in failing to order United to pay all defense costs incurred by the City, rather than the costs incurred after United was notified of the federal lawsuit. When an insurer breaches its obligation to defend an insured, the insured is entitled to recover his legal defense expenses. *Wilson v. Allstate Ins. Co.*, 85 S.D. 553, 186 N.W.2d 879 (1971). Accordingly, if there has been no breach of the obligation to defend, then no expenses may be recovered. Thus, any expenses incurred by the insured before the insurer has breached its duty to defend are not recoverable. In this case, United did not breach its duty to defend until after it had been notified of the claim because it could not conduct a defense without knowing about the claim against the City.

Therefore, I would hold that the City may recover from United the expenses it incurred defending against the federal lawsuit, but only those expenses incurred after the City's notification to United.

HENDERSON, J., joins this dissent.