In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1733

Lee N. Mortenson,

Plaintiff-Appellant,

v.

National Union Fire Insurance Company
of Pittsburgh, Pa.,

Defendant-Appellee.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 99 C 2419--Suzanne B. Conlon, Judge.

Argued December 6, 2000--Decided May 4, 2001


  Before Bauer, Posner, and Williams, Circuit
Judges.

  Posner, Circuit Judge. This is a
diversity suit, governed by Illinois law,
seeking the proceeds of a directors' and
officers' liability policy. The
plaintiff, Lee Mortenson, who was the
president of Opelika Manufacturing
Company, appeals from the grant of
summary judgment to the insurance
company. The appeal requires us to
determine whether the statutory penalty
imposed on responsible persons for
willful nonpayment of payroll taxes is a
"penalty" within the meaning of an
exclusion in the D&O policy.

  The policy, issued in 1982, covers
claims made between August 1982 and
August 1985 that resulted in losses to
directors or officers by reason of any
"wrongful act" committed by them in the
course of their corporate duties. But the
policy excludes losses consisting of
"fines or penalties imposed by law or
other matters which may be deemed
uninsurable under the law pursuant to
which this policy shall be construed."
Mortenson became president of Opelika in
1984, at a time when the company was
experiencing financial distress as a
result of which it had in May of that
year, three months before he assumed

office, failed to remit more than $100,000 in payroll taxes due the federal government. Mortenson learned about this default in November and told his financial officers that he didn't want to see a repetition of it, but he took no disciplinary steps against the people responsible for the default and he instituted no measures to prevent its recurrence. On the contrary, he participated in efforts by the company to identify creditors whom the company could persuade to allow late payment, though he should have known that by picking and choosing among creditors he was inviting his underlings to put the Internal Revenue Service last (more on that later). And, sure enough, in December of 1984 and the first two months of the following year, Opelika again failed to pay its payroll taxes, while continuing to pay other, more exigent creditors.

The IRS discovered the defaults and in July 1985 hit Mortenson with a proposed assessment of 100 percent of the past-due taxes, pursuant to 26 U.S.C. sec. 6672(a), which makes any person responsible for collecting, accounting for, and paying over payroll taxes who "willfully" fails to do any these things "liable to a penalty equal to the total amount of tax evaded, or not collected, or not accounted for and paid over." The government sued Mortenson to collect the penalty, and eventually the parties settled the suit for $900,000--for which loss the insurance company has refused to reimburse him.

The insurance policy does not define "penalties," and Mortenson argues that therefore it is ambiguous and we must interpret the term as favorably to Mortenson as reason allows. So interpreted, the term does not, he continues, encompass the penalty imposed by section 6672(a), because it is not "really" a penalty. He offers a number of reasons why it is not. One is that the aim is to collect taxes rather than to punish the willfully delinquent responsible person, as shown by the fact that it is the policy of the InternalRevenue Service not to use the statute to collect more than the total amount of unpaid tax. Levit v. Ingersoll Rand Financial Corp., 874 F.2d 1186, 1191 (7th Cir. 1989). So if the unpaid tax were $250,000, which would make each

responsible person who had willfully failed in his duty to see to its payment liable for a $250,000 penalty, the total penalties assessed against all those responsible persons would be capped at $250,000. For example, if the IRS was able to collect $100,000 of the $250,000 in unpaid tax from the company itself, the penalties collected from the responsible persons would be capped at $150,000.

Mortenson argues further that a number of cases, though only one involving the interpretation of an insurance policy, St. Paul Fire & Marine Ins. Co. v. Briggs, 464 N.W.2d 535 (Minn. App. 1990), describe the section 6672(a) penalty as not really a penalty. United States v. Sotelo, 436 U.S. 268, 275 (1978); Monday v. United States, 421 F.2d 1210, 1215-16 (7th Cir. 1970); Aardema v. Fitch, 684 N.E.2d 884, 887-89 (Ill. App. 1997). Only the last of these cases supports his position. Briggs and Monday say merely that the section 6672(a) penalty is not a criminal penalty, which is correct but irrelevant; and Briggs went on to hold that the section 6672(a) penalty was in any event uninsurable as a matter of law, 464 N.W.2d at 539, a holding that would do in Mortenson as well. The issue in Sotelo was not whether the section imposes a penalty, but, as explained in Duncan v. Commissioner, 68 F.3d 315, 318 (9th Cir. 1995), which holds that the section does impose a penalty, whether a debt based upon it is dischargeable in bankruptcy--and the Court held that it was not. Aardema v. Fitch, supra, 684 N.E.2d at 890, which involved a state statute that allows (as the federal statute now does, 26 U.S.C. sec. 6672(d)) a responsible person against whom the penalty has been assessed to seek contribution from other responsible persons who may be liable, does state that "section 6672 is merely a collection device for the government and is not meant to punish," though Wynne v. Fischer, 809 S.W.2d 264 (Tex. App. 1991), which involves the same issue, is squarely contra. Mortenson adopts the argument of Aardema and adds that a penalty is a punishment for deliberate wrongdoing, of which the willfulness required for liability under section 6672(a) is, he contends, only a pale shadow.

Taking the last point first, we point out that penalties are frequently imposed for conduct well short of deliberate wrongdoing. Reckless and negligent homicide are crimes, fines are imposed for speeding even when the driver was unaware that he was exceeding the speed limit, and there are even strict liability crimes, where the defendant's state of mind is irrelevant and even the fact that he could not have prevented the criminal act from occurring is not a defense. See, e.g., United States v. Park, 421 U.S. 658, 670-73 (1975); United States v. Freed, 401 U.S. 601, 607-10 (1971); Mueller v. Sullivan, 141 F.3d 1232, 1235-36 (7th Cir. 1998); United States v. Hogan, 89 F.3d 403, 404 (7th Cir. 1996); United States v. Torres-Echavarria, 129 F.3d 692, 697-98 (2d Cir. 1997); cf. State v. Yanez, 716 A.2d 759, 763 (R.I. 1998). Willfulness within the meaning of section 6672(a) "means that the person either knew the taxes were not being turned over to the government and nonetheless opted to pay other creditors, or recklessly disregarded a known risk that the taxes were not being paid over." United States v. Kim, 111 F.3d 1351, 1357-58 (7th Cir. 1997); see also Monday v. United States, supra, 421 F.2d at 1215-16; Phillips v. Internal Revenue Service, 73 F.3d 939, 942 (9th Cir. 1996); Malloy v. United States, 17 F.3d 329, 332 (11th Cir. 1994). We went further and held in Wright v. United States, 809 F.2d 425, 427-28 (7th Cir. 1987), that gross negligence is sufficient to constitute willfulness under the statute.

Although it is true that the Internal Revenue Service caps the penalty at the amount of tax due, this is not a statutory limitation; it is simply an enforcement policy. Levit v. Ingersoll Rand Financial Corp., supra, 874 F.2d at 1191; Duncan v. Commissioner, supra, 68 F.3d at 318. The fact that the statute now allows contribution does not cap the penalty at the amount of taxes either, or for that matter impose any other ceiling. Contribution is not about total liability, but about its allocation among the wrongdoers. In a case in which the amount of tax due was $250,000, and two responsible persons were each liable for the penalty, the government could if it wanted assess and collect $250,000 from each. The two would be free to seek

contribution from other responsible persons, perhaps even to rearrange the liability voluntarily between themselves by means of an indemnity agreement, as held in Lostocco v. D'Eramo, 518 S.E.2d 690, 696 (Ga. App. 1999); but their obtaining contribution whether from each other or from others would not change the fact that the government had collected penalties twice as great as the amount of taxes owed. And finally the fact that the IRS uses section 6672(a) as a collection device does not distinguish it from a number of unmistakably criminal penalties, such as those for minor thefts, vandalism, and other minor property crimes, where the police use the threat of prosecution to induce the wrongdoer to make restitution to his victim more often than they actually prosecute.

We conclude that section 6672(a) imposes the civil counterpart of a fine. Monetary penalties for wrongful conduct are civil fines, and are encompassed by the "fines or penalties" provision in the insurance policy. Any other conclusion would inject extreme uncertainty into the interpretation of insurance policies. Whether a penalty so designated in the statute creating it, a penalty that on its face is a civil fine, was a penalty within the meaning of the policy exclusion would require a searching and often indeterminate inquiry into the history and function and interpretation and details of the statutory scheme. Alerted to this concern by the court's questions at argument, Mortenson's lawyer suggested that the policy could be rewritten to exclude "penalties that are called penalties in the statutes that create them." That would stop inquiry at the face of the statute. It is a good suggestion, but the possibility of making an insurance policy clearer doesn't imply that it is unclear in its present form. Anyone reading the insurance policy at issue in this case--and remember that a D&O policy is purchased by a firm, not by an individual, and protects business executives, not the average consumer-- would think that the term "penalties and fines" covered exactions described as penalties or fines in the statutes imposing them. The reader would not think the exclusion limited to a subset of penalties and fines impossible to identify without a protracted inquiry

with an unpredictable outcome.

We have yet to mention the most compelling argument against the interpretation for which Mortenson contends. For obvious reasons, insurance companies try to avoid insuring people against risks that having insurance makes far more likely to occur. The temptation that insurance gives the insured to commit the very act insured against is called by students of insurance "moral hazard" and is the reason that fire insurance companies refuse to insureproperty for more than it is worth--they don't want to tempt the owner to burn it down. Consider the likely effects of insuring against the section 6672(a) penalty. When a firm gets into financial difficulties and creditors are pressing it for repayment, the firm tries--Opelika tried--to pay the most pressing creditors currently and hold off the others till later. See C. Richard McQueen & Jack F. Williams, Tax Aspects of Bankruptcy Law and Practice sec. 19:14, p. 19-18 (3d ed. 1997). This tendency is one of the reasons for the rules against preferences in bankruptcy, see 11 U.S.C. sec. 547; In re Midway Airlines, Inc., 69 F.3d 792, 797 (7th Cir. 1995); In re Tolona Pizza Products Corp., 3 F.3d 1029, 1032 (7th Cir. 1993), preferences being the favoring, often, of the most exigent creditors to the prejudice of the others, as the firm struggles to stay afloat. (When it sinks, the rest of the creditors go down with it.) The temptation to put the IRS at the end of the line is great. The IRS is unlikely to be aware that the firm is in difficulty, and if the firm decides therefore not to remit payroll taxes as they come due, but to favor the creditors who are threatening to seize the firm's assets or petition it into bankruptcy, the IRS is unlikely even to notice for some time that it is being stiffed. By the time it wakes up, the firm will probably be unable to pay the taxes that it failed to remit. It is to prevent firms from yielding to the temptation to put the IRS at the end of the creditor queue that Congress has imposed liability for nonpayment of payroll taxes on the responsible officers of the firm. For those persons to be insured against this liability will tempt them to do just what Opelika did here and what the penalty provision of section 6672(a) is designed to prevent--pay other

creditors first, funding the preference by not paying the IRS at all. It would be ironic to use the IRS's policy of lenity in forgoing multiple collection of the statutory penalty to reduce the likelihood of its collecting the taxes for the nonpayment of which the penalty is imposed.

It is strongly arguable, indeed, that insurance against the section 6672(a) penalty, by encouraging the nonpayment of payroll taxes, is against public policy, so falling under the last clause of the policy exclusion and possibly under the rule in Illinois as elsewhere that forbids certain types of insurance as being against public policy because of the acute moral hazard that the insurance creates. A familiar example is taking out a life insurance policy on another person's life without his consent. Connecticut Mutual Life Ins. Co. v. Schaefer, 94 U.S. 457, 460 (1878); Harley-Davidson, Inc. v. Minstar, Inc., 41 F.3d 341, 343 (7th Cir. 1994); Fisher v. Angelone, 163 F.3d 835, 839 (4th Cir. 1998). But closer to this case is the rule that forbids insuring against criminal fines, see, e.g., Beaver v. Country Mutual Ins. Co., 420 N.E.2d 1058, 1060 (Ill. App. 1981); Northwestern National Casualty Co. v. McNulty, 307 F.2d 432, 440-41 (5th Cir. 1962)--a rule that Illinois courts have extended to punitive damages, Bernier v. Burris, 497 N.E.2d 763, 776 (Ill. 1986); Beaver v. Country Mutual Ins. Co., supra, 420 N.E.2d at 1060, a form of civil penalty and, in one case, Crawford Laboratories, Inc. v. St. Paul Ins. Co., 715 N.E.2d 653 (Ill. App. 1999), to civil penalties explicitly so designated. We need not decide, however, whether insuring against the section 6672(a) penalty falls within this ban. For purposes of interpreting this insurance policy, a penalty is a penalty is a penalty.

Affirmed.