CRAWFORD LABORATORIES, INC., Plaintiff-Appellant, v. ST. PAUL INSURANCE COMPANY OF ILLINOIS, Defendant-Appellee (As You Sow, Defendant).

First District (4th Division)   No. 1—98—3317

Opinion filed June 30, 1999.

Steven A. Snakard, of McCarthy, Duffy, Neidhart & Snakard, of Chicago, for appellant.

Gregory S. Norrod and Vineet Gosain, both of Oppenheimer Wolff & Donnelly, of Chicago, for appellee.

JUSTICE HALL delivered the opinion of the court:

Plaintiff, Crawford Laboratories, Inc. (Crawford), filed a declaratory judgment action against its liability insurance company defendant, St. Paul Insurance Company of Illinois (St. Paul), to determine the rights of the parties under a commercial general liability policy (CGL) issued by St. Paul to Crawford. Crawford sought a declaration that St. Paul was obligated to defend and indemnify Crawford for costs and attorney fees incurred in defending an action filed against Crawford by As You Sow (AYS), in the superior court of Marin County, California. The parties cross-moved for summary judgment. Summary judgment was granted in favor of St. Paul. Crawford's motion for reconsideration and to vacate the summary judgment order was denied.

On appeal, Crawford contends that the trial court erred in granting summary judgment in favor of St. Paul. Crawford next contends that the AYS action seeks damages for bodily injury. Crawford also contends that the AYS complaint alleges bodily injury caused by an event within the liability coverage of the St. Paul policy. Finally, Crawford contends that Illinois public policy requires that St. Paul provide a defense and coverage for the underlying complaint.

The following facts are relevant to this appeal. Crawford manufactures and distributes paint and related products from its principal place of business in Chicago, Illinois. St. Paul issued a commercial general liability insurance policy to Crawford in February 1994. St. Paul requested that Crawford furnish information regarding the specific compounds, chemicals, and solvents utilized by Crawford in manufacturing its products. St. Paul also requested that Crawford supply copies of representative product labels for Crawford's largest selling products.

In January 1995, the underlying California action was filed against Crawford by AYS, a California nonprofit organization. The AYS complaint sought injunctive relief and the imposition of penalties against Crawford under California's Safe Drinking Water and Toxic Enforcement Act of 1986 (Cal. Health & Safety Code § 25249.5 (West 1988)) (Proposition 65). Specifically, AYS sought: (1) civil penalties against Crawford in the amount of $2,500 per day for each violation; (2) to enjoin Crawford from offering its products for sale in California without providing clear and reasonable warnings; (3) restitution to individuals in the State of California of the purchase price of all the products sold in California in violation of Proposition 65's warning requirements; and (4) AYS' reasonable attorney fees and costs of suit.

AYS alleged that under Proposition 65, a business must provide individuals with a clear and reasonable warning before exposing them to certain toxic chemicals designated by the State of California as a known cause of cancer or birth defects. AYS alleged that, since 1988, Crawford has engaged in conduct that violates Proposition 65 by placing into commerce products containing Proposition 65 listed chemicals without a clear and reasonable warning. AYS further alleged that the individuals exposed to these chemicals have suffered irreparable harm. AYS alleged that Crawford knowingly and intentionally made these products available for sale in California and knew that their normal use would expose individuals to toxic chemicals.

Crawford tendered its defense of the AYS complaint to St. Paul. However, St. Paul denied it had a duty to defend or indemnify Crawford in the AYS action because: (1) the AYS action did not seek damages; (2) the AYS action did not seek damages for bodily injury within policy coverage; and (3) AYS only alleged intentional conduct by Crawford, which is beyond the CGL's coverage. Crawford retained independent counsel in the underlying case. Crawford and AYS settled the matter for $3,000. In defending the underlying action, Crawford incurred attorney fees and expenses in excess of $117,500.

Crawford filed its complaint for declaratory judgment, and both parties subsequently moved for summary judgment. The trial court granted St. Paul's motion for summary judgment, holding that the AYS lawsuit did not seek damages for bodily injury. Crawford subsequently filed a motion to reconsider, which was denied. This appeal followed.

■ ■ The construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court to determine. *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 620 N.E.2d 1073 (1993). In such cases, disposition by way of summary judgment is appropriate. *Crum & For-*

*ster Managers Corp.*, 156 Ill. 2d at 384. The standard of review is *de novo. Laycock v. American Family Mutual Insurance Co.*, 289 Ill. App. 3d 264, 266, 682 N.E.2d 382 (1997). In Illinois, an insured's potential liability for the purposes of defense and indemnity coverage is measured by the allegation of the underlying complaint. *Conway v. Country Casualty Insurance Co.*, 92 Ill. 2d 388, 393, 442 N.E.2d 245 (1982). If the facts alleged in the complaint fall within, or potentially within, the language of the policy, the insurer's duty to defend arises. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 108, 607 N.E.2d 1204 (1992). If the terms of the policy are clear and unambiguous, they must be given their plain and ordinary meaning. *Outboard Marine*, 154 Ill. 2d at 108. Only where it is clearly apparent on the face of the complaint that the claim is beyond policy coverage can the insurer justifiably refuse to defend. *La Rotunda v. Royal Globe Insurance Co.*, 87 Ill. App. 3d 446, 451, 408 N.E.2d 928 (1980).

The St. Paul commercial general liability policy provides in relevant part:

"**Bodily injury and property damage liability.**

We'll pay amounts any protected person is legally required to pay as damages for covered bodily injury, property damage or fire damage that:

happens on or after the retroactive date; and is caused by an event.

\* \* \*

*Bodily injury means:*

any harm to the health of other persons, including physical harm, sickness, disease and mental anguish, injury or illness. And it includes care, loss of services or death that results from such harm.

*Property damage means*:

physical damage to tangible property of others, including all resulting loss of use of that property; or loss of use of tangible property of others that isn't physically damaged.

\* \* \*

*Event means*:

an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Emphasis in original.)

■ Crawford contends that the AYS action seeks damages for bodily injury pursuant to Proposition 65. St. Paul contends that AYS does not seek damages (for bodily injury or property damage) that would bring the claim under the CGL. St. Paul further contends that Proposition 65 does not award damages for bodily injury. We agree.

Proposition 65 was enacted on January 1, 1987. Its purpose is to protect citizens of California and their drinking water against

chemicals that cause cancer and reproductive harm. Proposition 65 in pertinent part states:

"(1) Any person violating or threatening to violate Section 25249.5 *** may be enjoined in any court of competent jurisdiction.

(2) Any person who has violated Section 25249.5 shall be liable for a civil penalty not to exceed $2500.00 per day for each violation ***." Cal. Health & Safety Code § 25249.5 (West 1988).

Proposition 65, thus, does not afford a remedy for bodily injury. Since no remedy is available for bodily injury under Proposition 65, we conclude that AYS could not have been seeking damages for bodily injury. Moreover, AYS's complaint clearly sought injunctive relief and civil penalties. Furthermore, the CGL expressly states that St. Paul will pay amounts that Crawford is "legally obligated to pay as damages for covered bodily injury." Because AYS was not seeking damages for bodily injury, St. Paul has no duty to defend and indemnify under the CGL.

Crawford further contends that the underlying action alleges bodily injury which is covered under the CGL provision for "bodily injury." St. Paul contends, however, that AYS's allegations are simply proffered as evidence of the problems caused by Crawford's violation of Proposition 65. St. Paul further contends that AYS seeks damages for Crawford's statutory violation of Proposition 65 versus damages for bodily injury resulting from exposure to toxins. We agree.

The relevant inquiry is whether the damages sought are for bodily injury which would allow recovery under the CGL. *Diamond State Insurance Co. v. Chester-Jensen Co.*, 243 Ill. App. 3d 471, 611 N.E.2d 1083 (1993), is instructive.

In *Diamond State*, the underlying action was filed by the State of Illinois. The state sought damages resulting from the failure of an air conditioning system in a state office building. The complaint alleged that, during the summers of 1985 and 1986, the air conditioning system failed to adequately cool the building.

The state alleged breach of contract and warranty against Chester-Jensen. The complaint also alleged that the state suffered economic damages as well as other damages, including lost work days and lost productivity from state employees. Diamond State Insurance filed a motion for summary judgment, contending that the insurance policies did not cover this potential liability. Chester-Jensen argued that coverage was present under the "bodily injury" provision of the policy, reasoning that the lost work days and lost productivity resulted from the absence of employees who suffered illness or injury.

The court rejected Chester-Jensen's interpretation of the state's allegations because it ignored the nature of the underlying complaint.

*Diamond State*, 243 Ill. App. 3d at 477. The court concluded that the state was not seeking recovery for damages sustained by its employees due to any illness or other bodily injury resulting from the faulty air conditioning system. But, rather, the "core of the State's claim for damages against Chester-Jensen is a claim for its economic losses." *Diamond State*, 243 Ill. App. 3d at 477-78. Moreover, the court recognized that the state's complaint alleged physical injury to state employees. However, those allegations were made "not for recovery for the injured employees," but "offered as evidence of the problems that resulted" from the defective system. *Diamond State*, 243 Ill. App. 3d at 477-78.

In the instant case, the underlying AYS complaint seeks damages for an alleged statutory violation. The underlying complaint alleges physical injury to individuals. However, AYS did not bring the action on behalf of the citizens of California who were exposed to toxins. Nor was AYS seeking recovery for damages sustained by them due to any irreparable harm or other bodily injury. The core of AYS's claim for damages is not a claim for damages due to bodily injury. The allegations of bodily injury were made "not for recovery for the injured" citizens but, rather, were "offered as evidence of the problems that resulted" from the violation of Proposition 65. *Diamond State*, 243 Ill. App. 3d at 478. Thus, AYS's allegations of bodily injury are beyond the scope of coverage under the CGL.

Crawford further argues that the AYS action seeks damages for bodily injury because 50% of the fine assessed for violation of Proposition 65 is deposited into California's "Hazardous Substance Account." St. Paul argues, however, that the monetary penalty imposed is one for violation of the statute, not for bodily injury. We agree.

The purpose of the Hazardous Substance Account is to shift the cost of hazardous waste cleanups onto offenders and to compensate any individual harmed by hazardous substances. Cal. Health & Safety Code §§ 25249.5 *et seq.*, 25373 through 25378 (West 1988). The amount of the penalty levied has no relation to any bodily injury that may have been caused by Crawford's product. The monies in the Hazardous Substance Account may be used to benefit any person who has been harmed by toxins at large and, thus, are deposited into a general fund. Moreover, as previously stated, Proposition 65 does not award damages for bodily injury. Thus, AYS had no realistic expectation of receiving damages for bodily injury on behalf of California citizens.

Crawford also contends that the AYS complaint alleges "bodily injury" caused by an "event" within the liability coverage of the CGL. However, St. Paul contends that the AYS action alleges intentional conduct for which the CGL does not provide coverage notwithstanding bodily injury. We agree.

The terms of the CGL specifically state that St. Paul will "pay amounts any protected person is legally required to pay as damages for covered bodily injury *** that *** is caused by an event." The CGL defines an event as: "an accident, including continuous or repeated exposure to substantially the same general conditions." An accident may be further defined as " 'an unforeseen occurrence [of] *** disastrous character' or 'an undesigned sudden or unexpected event.' " *Travelers Insurance Cos. v. P.C. Quote, Inc.*, 211 Ill. App. 3d 719, 726, 570 N.E.2d 614 (1991).

Here, the AYS complaint does not address any such event or accident. The AYS complaint alleges that Crawford knowingly and intentionally made these products available for sale in California and knew that their normal use would expose individuals to toxic chemicals. An accident, by its very nature, contemplates an event that is unforeseen and neither intended nor expected. Crawford's failure to appropriately label its carcinogenic products cannot be considered an "accident" within the meaning of the policy because harmful exposure causing bodily injury was a foreseeable consequence of Crawford's conduct.

Finally, Crawford contends that Illinois public policy requires that St. Paul provide a defense and coverage. Crawford argues that because St. Paul addressed issues concerning product labels and consumer warnings, Crawford has a reasonable expectation of coverage. We disagree.

In Illinois, public policy "requires that insurance contracts be construed and enforced to accord with the objectively reasonable expectations of the insured." *Posing v. Merit Insurance Co.*, 258 Ill. App. 3d 827, 629 N.E.2d 1179 (1994). Here, it is not reasonable for Crawford to expect coverage for improper labeling and inadequate consumer warnings. It is the responsibility of the insured to be in compliance with the laws of the state with which it does business. Thus, St. Paul should not be held liable for Crawford's failure to comply with those laws. Furthermore, in Illinois, public policy prohibits insurance against liability for punitive damages that arise out of the misconduct of the insured. *Beaver v. Country Mutual Insurance Co.*, 95 Ill. App. 3d 1122, 1125, 420 N.E.2d 1058 (1981). Finally, since Crawford's claim does not fall within the scope of the CGL coverage, Crawford is not entitled to attorney fees or statutory penalties. *Shell Oil Co. v. AC&S, Inc.*, 271 Ill. App. 3d 898, 649 N.E.2d 946 (1995).

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

SOUTH, P.J., and WOLFSON, J., concur.