HPF, L.L.C., Plaintiff-Appellee, v. GENERAL STAR INDEMNITY COMPANY, Defendant-Appellant.

First District (6th Division)   No. 1—01—4066

Opinion filed March 28, 2003.

David E. Neumeister and Kelli A. Borden, both of Querrey & Harrow, Ltd., of Chicago, for appellant.

Eugene J. Frett and Gregg R. Hague, both of Sperling & Slater, P.C., of Chicago, for appellee.

JUSTICE TULLY delivered the opinion of the court:

Plaintiff, HPF, L.L.C. (HPF), filed a declaratory judgment action against its general liability insurance company defendant, General Star Indemnity Company (General Star), to determine the rights of the parties under a commercial general liability policy (CGL) issued by General Star to HPF. HPF sought a declaration that General Star was obligated to defend and indemnify HPF for costs and attorney fees incurred in defending an action (hereinafter *Day*) filed against HPF by Robert L. Day (Day), in the superior court of San Francisco County, California. The parties cross-moved for summary judgment. Summary judgment was granted in favor of HPF and the trial court awarded HPF damages in the amount of $317,779.04, plus postjudgment interest.

On appeal, General Star contends that the trial court erred in granting summary judgment in favor of HPF because the underlying *Day* action did not allege and did not seek damages for bodily injury. General Star further contends that the California statutes under which *Day* sued did not provide a remedy for bodily injury.

The following facts are relevant to this appeal. HPF is a distributor of herbal dietary supplement products. In 1997, HPF's product line included two herbal combinations called Herbal Phen-Fen and Herbal Phen-Fen Stage 2.

On November 19, 1997, Robert Day filed a lawsuit against HPF in the superior court of San Francisco County, California. Day's lawsuit was brought pursuant to a California statute that permits a plaintiff to sue on behalf of the general public. The *Day* lawsuit alleged that HPF violated various California statutes through the unlawful labeling, distribution and promotion of Herbal Phen-Fen and Herbal Phen-Fen Stage 2 as treatments for obesity.[1] Day alleged that in a letter dated November 5, 1997, the Food and Drug Administration informed

---

[1]The *Day* complaint brought eight claims for violation of the California Business and Professions Code (Cal. Bus. & Prof. Code § 17200 *et seq.* (Deering 1992)): (1) unlawful business practices, predicated on section 111330 of California's Sherman Food, Drug and Cosmetic Laws (Cal. Health & Safety

HPF that because HPF was representing its products as a "natural alternative" to the prescription drugs commonly known as Fen-Phen, HPF was representing its products as treatments for obesity. As such, the HPF products are considered drugs as defined in the Federal Food, Drug and Cosmetic Act (Act) and may not legally be marketed in the United States without approved new drug applications.

The *Day* complaint alleged that HPF violated the California statutes in the following ways: (1) HPF misbranded Herbal Phen-Fen and Herbal Phen-Fen Stage 2 because their labeling was false and misleading and failed to bear adequate directions for use; (2) HPF unlawfully marketed new drugs that had not been approved by the FDA; (3) HPF's labeling of its products was false and misleading as it suggested that the products were recognized as safe and effective for the intended use when they were not; (4) HPF made assertions of fact that were false when it represented that its products were effective and safe and posed no health risks; and (5) HPF misrepresented the quality and nature of its products and failed to disclose that these products had not been proven safe and effective for the treatment of obesity. The *Day* complaint sought equitable relief in the form of an injunction against HPF to (1) restrain HPF from selling and distributing its Herbal Phen-Fen products in California; (2) require HPF to disgorge all monies acquired; (3) restrain HPF from continuing to misrepresent its Herbal Phen-Fen products; (4) force HPF to undertake a public information campaign to warn and inform consum-

---

Code § 111330 (Deering 1997)) (false and misleading labeling); (2) unlawful business practices, predicated on section 355(a) of the Federal Food, Drug and Cosmetic Act (21 U.S.C. § 355(a) (2000)) (unlawfully marketing new drugs); (3) unlawful business practices, predicated on section 352(f) of the Federal Food, Drug and Cosmetic Act (21 U.S.C.§ 352(f) (2000)) (labeling fails to bear adequate directions for use); (4) unlawful business practices, predicated on section 352(a) of the Federal Food, Drug and Cosmetic Act (21 U.S.C. § 352(a) (2000)) (misleading labeling); (5) unlawful business practices, predicated on sections 1572, 1709 and 1710 of the California Civil Code (Cal. Civ. Code §§ 1572, 1709, 1710 (Deering 1994)) (negligent misrepresentation); (6) unlawful business practices, predicated on sections 1572, 1709 and 1710 of the California Civil Code (Cal. Civ. Code §§ 1572, 1709, 1710 (Deering 1994)) (fraud and deceit); (7) unlawful business practices, predicated on section 1750 *et seq.* of the California Civil Code (Cal. Civ. Code § 1750 *et seq.* (Deering 1994)); Consumer Legal Remedies Act (misrepresentation of benefits and uses of goods); and (8) unlawful business practices, predicated on sections 2314 and 2315 of the California Commercial Code (Cal. Commercial Code §§ 2314, 2315 (Deering 1999)) (breach of contract and warranty); and one claim for violation of the California Business and Professions Code (Cal. Bus. & Prof. Code § 17500 *et seq.* (Deering 1992)) (unfair advertising).

ers that HPF Herbal Phen-Fen products have not been proven either safe or effective in the treatment of obesity; (5) force HPF to make restitution to consumers of the product; and (6) establish a fund for medical monitoring of all persons who used HPF's Herbal Phen-Fen products.

HPF tendered its defense of the *Day* complaint to General Star. However, General Star denied it had a duty to defend or indemnify HPF in the *Day* action because the *Day* complaint did not seek damages for "bodily injury." HPF ultimately settled the *Day* action.

HPF filed its complaint against General Star for a declaratory judgment and both parties subsequently moved for summary judgment. The trial court granted HPF's motion for summary judgment finding that the underlying *Day* action sought damages for bodily injury in that it sought to establish a fund for medical monitoring of all persons who used HPF's herbal products. The trial court ruled that General Star breached its duty to defend and awarded damages to HPF. This appeal followed.

## ANALYSIS

■ Summary judgment is appropriate where, when viewed in the light most favorable to the nonmoving party, the pleadings, depositions, affidavits, and admissions on file show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 2000); *Sollami v. Eaton*, 201 Ill. 2d 1, 6-7, 772 N.E.2d 215 (2002). Our review of a grant of summary judgment is *de novo. Villarreal v. Village of Schaumburg*, 325 Ill. App. 3d 1157, 1160, 759 N.E.2d 76 (2001).

■ In determining whether an insurer has a duty to defend its insured, the court must look to the allegations in the underlying complaint and compare them to the relevant provisions of the insurance policy. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 107-08, 607 N.E.2d 1204 (1992). If the underlying complaint alleges facts within or potentially within policy coverage, the insurer is obliged to defend its insured even if the allegations are groundless, false, or fraudulent. *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 73, 578 N.E.2d 926 (1991). An insurer may not justifiably refuse to defend an action against its insured unless it is clear from the face of the underlying complaint that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage. *Wilkin*, 144 Ill. 2d at 73. Moreover, if the underlying complaint alleges several theories of recovery against the insured, the duty to defend arises if only one such theory is within the potential coverage of the policy. *Wilkin*, 144 Ill. 2d at 73.

The General Star commercial general liability insurance policy issued to HPF provides in pertinent part:

**"Bodily injury and property damage liability.**
We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages.

\* \* \*

'Bodily injury' means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

The issue is whether the allegations set forth in the *Day* complaint sufficiently raise claims seeking damages for bodily injury to fall within the meaning of the policy.

General Star contends that the *Day* complaint did not allege a covered "bodily injury" as that term is defined in the policy so that the claim does not fall within the coverage of the CGL. Moreover, General Star asserts that the California statutes under which Day sued do not provide a remedy for bodily injury.

HPF contends that the *Day* complaint seeks damages for bodily injury because it seeks the establishment of a fund for medical monitoring of all persons who used HPF's Herbal Phen-Fen products. HPF relies upon two cases from foreign jurisdictions, *Techalloy Co. v. Reliance Insurance Co.*, 338 Pa. Super. 1, 487 A.2d 820 (1984), and *Burt Rigid Box, Inc. v. Travelers Property Casualty Corp.*, 126 F. Supp. 2d 596 (W.D.N.Y. 2001), *aff'd in part & rev'd in part*, 302 F.3d 83 (2d Cir. 2002), for support of its position. We find that both cases are distinguishable and are therefore not persuasive authority for this court.

In both cases cited by HPF, the underlying complaint contained factual allegations of bodily injury and sought relief for that bodily injury. For example, in *Techalloy*, the underlying complaint claimed that the defendant had "recklessly dumped or stored trichloroetheline" and that "exposure to, contact with or ingestion of TCE, a hazardous and toxic chemical, may have caused serious injury, including neurological, pulmonary, hepatic and renal damage with possible mutagenic, teratogenic and carcinogenic results." *Techalloy*, 338 Pa. Super. at 5, 487 A.2d at 822. The complaint further alleged that "the plaintiff class suffered an increased risk of serious illness or death due to actual ingestion and/or use of contaminated water and suffered from high anxiety because of the awareness of this risk." *Techalloy*, 338 Pa. Super. at 5, 487 A.2d at 822. The underlying complaint sought the creation of a trust fund for the payment of present and future

medical expenses. The Supreme Court of Pennsylvania found that the underlying complaint alleged "exposure to, ingestion and use of water contaminated with a highly-dangerous chemical capable of causing severe physical damage" (*Techalloy*, 338 Pa. Super. at 11, 487 A.2d at 826) and held that these allegations were sufficient allegations of personal injury to render the underlying complaint at least potentially within the policy's coverage.

Similarly, in *Burt Rigid Box*, the insurance company argued that the underlying plaintiffs did not seek damages for "bodily injury" within the coverage of the policy because they sought only injunctive relief for the establishment of a fund for future medical testing and surveillance based on exposure to a landfill containing hazardous waste. The district court in New York disagreed and found that the underlying complaint alleged claims for bodily injury, noting that the underlying complaint alleged that the plaintiffs were at a higher risk for developing certain cancers.

In the case at bar, however, there are no allegations of bodily injury in the underlying complaint. Despite HPF's characterization that the *Day* complaint generally alleges that Herbal Phen-Fen and Herbal Phen-Fen Stage 2 were not safe, our review of the *Day* complaint shows that it does not make a single allegation that HPF's herbal products caused bodily injury or even that they *may* cause bodily injury. In fact, the *Day* complaint carefully alleges that HPF's herbal products have not been proven safe and glaringly omits any allegation that the herbal products are unsafe or may be unsafe. We find that the essence of the *Day* complaint is that HPF misrepresented that its herbal products were *proven* safe and effective for the treatment of obesity when, in fact, those products had not been so approved.

We find *Crawford Laboratories, Inc. v. St. Paul Insurance Co. of Illinois*, 306 Ill. App. 3d 538, 715 N.E.2d 653 (1999), cited by General Star, to be insightful in determining the issue before this court. In *Crawford*, the underlying action was filed against Crawford by As You Sow (AYS), a California nonprofit organization. The underlying AYS complaint sought injunctive relief and the imposition of penalties against Crawford for the alleged violation of a California statute requiring warnings on the labels of products containing certain toxic chemicals. The underlying complaint alleged that Crawford's violation of the labeling requirements exposed individuals to toxic chemicals. In affirming the trial court's finding that St. Paul did not owe Crawford a duty to defend in the underlying action, this court stated that the "core of AYS's claim for damages is not a claim for damages due to bodily injury." *Crawford Laboratories*, 306 Ill. App. 3d at 543. In reach-

ing its decision, this court looked at the nature of the underlying complaint and found that it sought damages for violation of the statute and not for bodily injury resulting from exposure to toxins. 306 Ill. App. 3d at 542.

■ Similarly, here we find that the *Day* complaint fails to allege facts which fall within, or potentially within, the coverage language of the General Star policy. As stated above, the core of Day's claim is that HPF misled the public that its Herbal Phen-Fen products were proven safe and effective for the treatment of obesity when in fact those products were not approved. The *Day* complaint does not seek damages for any sickness or injury caused by ingesting HPF's herbal products; it seeks injunctive remedies for the misrepresentation of the quality and effectiveness of the products. Moreover, the establishment of a medical monitoring fund, cited by the trial court as an allegation of bodily injury, is nothing of the sort. The request for such a fund was in the prayer for relief and was not an allegation of bodily injury having been sustained. Further, medical monitoring of persons who used HPF's products seeks to monitor the products' effects. We cannot presume, and Day did not allege, that the products caused bodily injury. No such inference can be drawn from the *Day* complaint.

Accordingly, we reverse the finding of the trial court and hold that General Star did not breach any duty to defend HPF in the *Day* action. As such, we further find that General Star did not have a duty to indemnify HPF.

Reversed.

O'BRIEN, P.J., and GALLAGHER, J., concur.