The CONTINENTAL INSURANCE COMPANIES, Appellant,

v.

Walter E. HANCOCK et al., Appellees.

Court of Appeals of Kentucky.

June 15, 1973.

As Modified on Denial of Rehearing March 22, 1974.

O. Grant Bruton, John R. McCall, Middleton, Seelbach, Wolford, Willis & Cochran, Louisville, Reginald L. Ayers, Bell, Orr, Ayers & Moore, Bowling Green, for appellant.

Paul R. Huddleston, Huddleston & Huddleston, J. Reid Caudill, Marshall Funk,

Robert D. Simmons, Allender, Simmons & Robertson, Bowling Green, for appellees.

STEINFELD, Justice.

This is an appeal from a declaratory judgment which held the appellant, Continental Insurance Companies, liable for the payment of judgments totaling $74,000.00 plus interest obtained by appellees, Walter Hancock, Larry Chism and O. E. Wilburn against the appellee, Walter Simpson. Continental Insurance Company was the insurer of Walter Simpson.

In October 1967, Hancock, Chism and Wilburn were patrons of a nightclub operated by Simpson in Bowling Green, Kentucky. Chism insulted one of the waitresses in the establishment and was asked to leave by Simpson. Some difficulty developed between the two men and Simpson tore Chism's shirt and forced him to leave the premises. His companions, Hancock and Wilburn, also left but the three remained for a time outside the premises. Simpson later went outside and some further recrimination took place between Simpson and Chism. Simpson went back into the nightclub, there is some testimony he called for help, and presently three of his employees came outside and a fight promptly ensued between the three employees and Hancock, Chism and Wilburn as a result of which Hancock, Chism and Wilburn were each injured. There was testimony that Simpson accompanied his three employees when they came out of the building but Simpson maintains that he was making a telephone call while the fighting was going on and was not aware of it when it started. All of this evidence was elicited in the trial of a lawsuit against Simpson in which Hancock, Chism and Wilburn alleged that they were wilfully assaulted by Simpson and his employees or in the alternative that Simpson was grossly negligent in failing to adequately protect the patrons of his establishment from harm.

Simpson was insured by Continental Insurance Companies which was obligated by the policy to pay all sums which Simpson should become legally obligated to pay by reason of an accident resulting in bodily injury which was neither expected nor intended from the standpoint of the insured.

The policy contained a limit of liability of $25,000.00 for each person and $50,000.00 for each occurrence. The jury awarded compensatory damages to Hancock in the amount of $12,500.00, to Chism in the amount of $7,500.00 and to Wilburn in the amount of $10,000.00, or a total of $30,000.00 in compensatory damages.

The jury awarded punitive damages to Hancock in the amount of $17,000.00, to Chism in the amount of $10,000.00 and to Wilburn in the amount of $17,000.00 or a total of $44,000.00 in punitive damages.

The policy required that written notice of an occurrence be given to the company or its authorized agents as soon as practicable.

The first written notice of the occurrence was given to the company immediately after the filing of a lawsuit by Hancock, Chism and Wilburn in February 1968.

Upon receipt of notice of the litigation, Continental Insurance Companies notified Simpson that the employees were not covered by the policy; that questions of coverage of Simpson arose from the fact that it was claimed that the injuries were wilful and intentional and were therefore intended or expected from the standpoint of the insured. Coverage was likewise questioned on the ground of lack of notice, that the total claim exceeded policy limits; and that the policy did not provide coverage for punitive damages. Continental offered to defend under a reservation of right to later deny liability for any judgment that might be obtained. Simpson rejected the reservation of rights.

Continental thereafter provided attorneys for the defense of the claim against Simpson and a running battle took place between the company and Simpson with the

company maintaining at all times its right to defend under the reservation and Simpson rejecting their right to do so.

The attorneys provided by Continental to represent Simpson in the defense of the tort claim filed an action for declaration of rights against Simpson on behalf of Continental in which Continental sought to have declared its non-liability for the payment of any judgment which might be rendered in the tort action by reason of its policy defenses.

After the judgment was returned against Simpson in the tort action Continental refused to prosecute an appeal on behalf of Simpson or to supersede the judgment.

Hancock, Chism and Wilburn obtained an order of garnishment against Continental for any funds held by Continental for which it was indebted to Simpson.

The following proceedings then took place in the action for declaration of rights. Continental took the deposition of the court reporter who had reported the trial of the tort action and filed as an exhibit the transcribed testimony of some, but not all, of the witnesses in the tort litigation. The trial court ordered that the common law action by Hancock, Chism and Wilburn against Simpson, which had already been tried and judgment entered, be consolidated with the action for declaration of rights. Consolidation was objected to by Continental but the objection was not pursued on this appeal. Simpson then moved for a summary judgment upon the records of the consolidated cases. Hancock, Chism and Wilburn moved for a judgment on the merits as to all outstanding questions.

Simpson moved that his motion for summary judgment be brought on for hearing on March 6, 1970, or as soon thereafter as counsel could be heard. Continental moved that the hearing for summary judgment be continued until March 20 and an order was entered which stated:

"These consolidated cases stand submitted for judgment upon the records of both cases; nevertheless, counsel for all parties are hereby given additional time to and including the 20th day of March, 1970, at the hour of 10:00 A.M., within which they may file written briefs or appear for oral argument of the issues.

"Furthermore, counsel for all parties may file counter-affidavits at any time prior to the final hearing on the 20th day of March, 1970."

On March 10, 1970, Continental moved for summary judgment and the parties filed affidavits and exhibits in support of their motions for judgment. The parties seem to have treated the case as if it was being fully tried by the court. On March 19, 1970, the trial judge entered a thirty-page typewritten findings of fact, conclusions of law and judgment disposing of the case in the manner in which cases tried by the court without the intervention of a jury are usually concluded. It is that judgment which is the subject of this appeal.

At the outset we are confronted with appellees' motion to dismiss the appeal. The motion is grounded upon the assertion that appellant failed to file the complete record of both of the consolidated actions in this court and failed to file a statement of points as required by CR 75.04. A second ground for dismissal of the appeal is that the appellant is represented on this appeal by the same attorneys who represented the conflicting interests of the defendant in the trial of the tort action below.

■ CR 75.04 requires a statement of points only in the event that the entire record on appeal is not designated. The designation of record filed in this appeal designated the entire record in both the tort action and the action for declaration of rights. No statement of points was required to be filed.

Appellees argue that a conflict of interest existed between appellee, Simpson, and the Continental Insurance Companies in that Continental was seeking to avoid liability on its policy by reason of policy de-

fenses and that the attorney furnished by Continental to represent appellee, Simpson, in the defense of the tort claim was at all times securing information to be used against Simpson in the company's effort to defeat liability for the payment of any judgment. Because of this alleged breach of faith appellees contend that this court should penalize Continental by dismissing the appeal and that the trial court was justified in refusing to consider the pleadings and proof offered by Continental's attorneys in the declaratory judgment action.

■ The record does not show that appellee Simpson at any time moved to disqualify Continental's attorneys in the declaratory judgment action from appearing against him on the ground that the same attorneys had represented him in a matter arising from the same circumstances. The cases cited by appellees from other jurisdictions seem to hold that such conflicting representation would warrant disqualification of the attorneys but no case cited is authority for the proposition that such representation is cause for striking pleadings or dismissing the appeal and we do not think the circumstances here involved warrant any such harsh consequences.

Appellees concede the right of Continental to prosecute the declaratory judgment action but contend it should not be permitted to do so using the same attorneys that it had furnished to represent appellant. In that event we think it was incumbent upon appellees to make a motion in the trial court to disqualify those attorneys.

As to the judgment under consideration the appellees contend it is a judgment on the merits. The appellant contends it is a summary judgment or at least a judgment without a trial. They argue that no hearing was held on the motions for summary judgment and no trial was held on the motion for judgment on the merits. The record reveals that the case was submitted for judgment on March 6, 1970, but that parties were given to and including March 20th for filing affidavits, briefs or to ap-

pear for oral argument of the issues. Nevertheless, judgment was entered on March 19, 1970.

■ The term "judgment on the merits" is not a precise term but apparently the parties used it to distinguish a judgment which resolves conflicting issues of fact from one which decides an issue as a matter of law when no genuine issue exists as to any material fact. Though we do not necessarily adopt that distinction, viewed in that light we think the judgment was not a summary judgment.

Although the time within which the parties were permitted to file briefs and affidavits and make argument was apparently cut short by one day by entry of the judgment, the case was plainly under submission by order of court and the detailed findings of fact are not consistent with a summary judgment.

The question remains as to whether the findings of the court were supported by the record and whether the findings and conclusions support the judgment. One of the policy defenses was that the policy did not afford coverage because the injuries to Hancock, Chism and Wilburn were expected and intended by Simpson. The trial judge made no independent finding regarding this but based his findings upon his consideration of the effect of the jury verdict rendered in the trial of the common law tort claim. He found that although the claimants presented two theories of liability, viz., *intentional injury* and *injury due to gross negligence,* plaintiffs abandoned the theory of intentional injury when they offered instructions only upon the theory of negligent injury. He further found that the case was submitted to the jury under instructions embodying liability for negligent injury and that the general verdict of the jury was its determination that the injuries resulted from negligence rather than from wilfulness.

We cannot agree that such an interpretation can be given to the jury verdict.

The jury was instructed in eight pages of typewritten instructions which covered the waterfront. In addition to defining the duties of the defendants in terms which submitted the case on the theory of negligence, the instructions also covered the right of self defense from unprovoked assault and battery, the duties of the plaintiffs to retreat or withdraw from the premises to avoid further harm, and the burden of the plaintiffs to prove that their injuries resulted from negligent or *wilful* acts.

■ The verdict awarding *compensatory damages* was simply a general verdict in favor of the plaintiffs for specified amounts. It cannot be said that the question was presented to the jury or that the jury determined whether the acts complained of were wilfully done or the result of negligence. The trial judge made no independent determination that the acts complained of were not wilful and intentional. There has been no resolution therefore of the defense that Continental has no liability to pay the judgment because the injuries were expected or intended, and the judgment must be reversed for a determination of that issue.

■ A second policy defense concerned the question of notice to the insurer. The policy required written notice of the occurrence as soon as practicable. There was no written notice from the date of the occurrence, October 20, 1967, until the filing of the lawsuit on February 13, 1968. The trial judge found as a fact that prompt notice was given, but there is no evidence in the record to support that finding. Appellees point out that they filed an affidavit of Simpson in which he stated that he gave oral notice to Continental's agent promptly and as soon as practicable and that he filed a letter from the agent which acknowledged that the matter was reported shortly after its occurrence. Neither the affidavit nor the letter was competent as substantial proof of an oral notice. The affidavit and letter were submitted in connection with Simpson's motion for summary judgment and it may have been proper for the court to consider them with respect to the entry of a summary judgment. We agree with counsel for appellees that the judgment entered was not a summary judgment however and the affidavit and letter were not competent evidence of notice on a trial on the merits.

A third policy defense was that Continental Insurance Companies was not obligated under its policy to pay the punitive damages adjudged against its insured.

It would seem to follow therefore that liability for punitive damages could not attach except in the event of conduct deserving of punishment. Nevertheless, we held in Smith's Adm'x v. Middleton, 112 Ky. 588, 66 S.W. 388, 23 K.L.R. 2010 (1902), that punitive damages may be assessed against a master for the wrongdoing of his servant even though the master was in no way a wrongdoer, the liability being assessed exclusively upon the principle of respondeat-superior. It is unreasonable in such a case not to allow the master to insure against his liability for punitive damages whether the servant's act was an intentional one or was an act of gross negligence. Most states which permit assessment of punitive damages against a master for the acts of his servant based solely upon the master-servant relationship and not because of any wrongful act or omission of the master do not find it against public policy, under such circumstances, to permit the master to insure against liability for punitive damages. For a collection of cases see Annotation, Liability Insurance Coverage, as extending to liability for punitive or exemplary damages, 20 A.L.R.3d 343; 22 Am.Jur.2d Damages, § 257.

■ Even though punitive damages are allowed solely as punishment and as a deterrent, we do not deem it against public policy to allow liability therefor to be insured against when the punitive damages are imposed for a grossly negligent act of the insured rather than an intentional

wrong of the insured. Some members of the court feel that punitive damages are an anomaly in the law and would abolish them altogether. The instructions which authorized compensatory damages were formulated in such a fashion that it is impossible to determine from the verdict whether the *compensatory* damages against Simpson were awarded for an act which the jury considered to be wilful or merely negligent—but as to *punitive* damages, the instructions authorized recovery only in the event of gross negligence. We must indulge the presumption that the *punitive* damages were awarded as a punishment for grossly negligent conduct, therefore the punitive damages are covered by the policy obligation "to pay all sums * * * which the insured shall be legally obligated to pay * * *."

■ The maximum limit of liability of the insurer for any one occurrence was $50,000.00. The policy provided that all bodily injury " * * * arising out of continuous exposure to substantially the same general conditions shall be considered as arising out of one occurrence." We think the facts of this case established that there was only one occurrence and the holding of the trial court to the contrary was clearly erroneous.

■ Appellees claim that the insurer should be held responsible for the entire judgment even though the judgment exceeds the limits of liability for one occurrence because of the bad faith of the appellant (1) in failing to effect a settlement of the claim, (2) in defending the claim with attorneys having a conflict of interest with appellees, and (3) in mishandling the proceedings by (a) committing trial errors, (b) failure to appeal and (c) failure to produce witnesses to corroborate the testimony of the appellee Simpson.

We have earlier in this opinion discussed the appellees' contention with respect to the use of attorneys who allegedly had a conflict of interest and we denied the claim of bad faith. After considering all of the circumstances of this case, we do not believe the evidence is sufficient to sustain a claim of bad faith against the insurer in failing to negotiate a settlement. State Farm Mutual Automobile Insurance Co. v. Marcum, Ky., 420 S.W.2d 113 (1967).

Although there may have been some trial errors by defense counsel, we do not believe that such errors were shown to have been the result of bad faith. Nor can we impose additional liability upon the company for failure to prosecute an appeal in a case where the parties did not themselves appeal and establish that there was a reversible error. Cf. Ursprung v. Safeco Insurance Company of America, Ky., 497 S.W.2d 726 (1973).

We therefore conclude that the holding of the trial court that the insurer was guilty of bad faith in the conduct of the defense of the appellees was erroneous.

The judgment is reversed for further proceedings consistent with this opinion and, upon retrial, the trial judge may in his discretion reopen the case for the admission of such further evidence as the parties may desire to introduce with respect to the policy defenses at issue in this action.

OSBORNE, C. J., and JONES, MILLIKEN, PALMORE, REED, STEINFELD and STEPHENSON, JJ., sitting.

All concur, except STEPHENSON, J., who dissents from that part of the opinion which holds that insurance against liability for punitive damages is not against public policy.