Jessica DAVIS and Cornelius Woods, Appellants

v.

KENTUCKY FARM BUREAU MUTUAL INSURANCE COMPANY, Appellee

NO. 2014–CA–001609–MR

Court of Appeals of Kentucky.

RENDERED: MARCH 11, 2016; 10:00 A.M.

Discretionary Review Denied by Supreme Court August 17, 2016

BRIEFS FOR APPELLANTS: Kevin C. Burke, Louisville, Kentucky, Andrew Horne, Louisville, Kentucky

ORAL ARGUMENT FOR APPELLANTS: Kevin C. Burke, Louisville, Kentucky

BRIEF AND ORAL ARGUMENT FOR APPELLEE: Michael D. Risley, Louisville, Kentucky

BEFORE: DIXON, D. LAMBERT AND THOMPSON, JUDGES.

## OPINION

THOMPSON, JUDGE:

Jessica Davis and Cornelius Woods appeal from a summary judgment in a declaratory judgment action filed by Kentucky Farm Bureau Mutual Insurance Company. The Jefferson Circuit Court ruled there was a single occurrence for the purpose of determining the amount of coverage available under a policy of insurance issued by Kentucky Farm Bureau to Trina's Treehouse Childcare, LLC (Trina's). We agree with the trial court there was a single occurrence as defined in the Kentucky Farm Bureau policy and, therefore, insurance coverage is limited to $500,000.

The underlying tragic facts are undisputed. On October 17, 2011, two-year-old Ja'Corey Davis died from asphyxiation after swallowing and choking on a push-pin while in the care and protection of Trina's. After Ja'Corey's death, the Cabinet for Health and Family Services investigated Trina's and discovered multiple violations of Kentucky Administrative Regulations: (1) push-pins within the reach of young children; (2) inadequate staff-to-child ratios; and (3) negligent supervision. The Cabinet issued an emergency order suspending the license and operation of Trina's.

Davis and Woods, Ja'Corey's parents and as co-administrators of Ja'Corey's estate, filed an action against Trina's in the Jefferson Circuit Court. In a second amended complaint, Davis and Woods alleged direct negligence claims against Trina's and vicarious liability claims against Trina's for the acts or omissions of its employees, including the multiple violations cited by the Cabinet. The second amended complaint alleged:

On information and belief, it was later determined by the Jefferson County Coroner that Ja'Corey died because he choked on a small push-pin or thumb-tack that he placed in his mouth while in the care of Trina's.

At the time Ja'Corey choked on the push-pin, Trina's was insured by a commercial general liability policy issued by Kentucky Farm Bureau covering Trina's and its employees. The Kentucky Farm Bureau policy limits coverage by the number of occurrences from which the claims arose, stating that each occurrence is limited to $500,000 and provides for an aggregate maximum of $1,000,000. The policy further provides that each occurrence limit is the maximum Farm Bureau will pay "because of all 'bodily injury' and 'property damages' arising out of any one 'occurrence.'" Occurrence is defined in the policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

A dispute arose between Kentucky Farm Bureau and Davis and Woods concerning the number of occurrences for purposes of the policy limitation provision. Kentucky Farm Bureau maintained the claims asserted against Trina's, its officers and employees arose from a single occurrence limiting coverage under the policy to $500,000. Davis and Woods contended that each act of negligence caused Ja'Corey's death and, therefore, there were multiple occurrences providing coverage under the policy in the amount of $1,000,000.

Kentucky Farm Bureau and Davis and Woods resolved the claims against Trina's, its officers and employees subject to an agreement that the dispute concerning the number of occurrences remained unsettled. Subsequently, Kentucky Farm Bureau filed this declaratory judgment action to resolve the dispute. Kentucky Farm Bureau filed a motion for judgment on the pleadings. Davis and Woods responded and filed a motion for summary judgment requesting that the trial court rule the claims asserted arose from multiple occurrences. The trial court ruled that the alleged negligent acts "combined to form a single occurrence, which resulted in the death of [Ja'Corey]." Although the trial court's original opinion and order recited only that it was denying Davis and Woods's motion for summary judgment, the opinion and order was amended to state summary judgment was granted in favor of Kentucky Farm Bureau. Davis and Woods appealed.

Pursuant to Kentucky Rules of Civil Procedure (CR) 56.01, "[a] party seeking to ... obtain a declaratory judgment may, at any time ... move with or without supporting affidavits for a summary judgment in his favor[.]" "In cases where a summary judgment has been granted in a declaratory judgment action and no bench trial held, the standard of review for summary judgments is utilized." *Ladd v. Ladd,* 323 S.W.3d 772, 776 (Ky.App.2010). "The general formula Kentucky courts at all levels employ to determine whether summary judgment is proper is to ask whether there are genuine issues of material fact, and, if not, whether the movant is entitled to judgment as a matter of law." *Smith v. O'Dea,* 939 S.W.2d 353, 355 (Ky. App. 1997). Here, there are no genuine issues of material fact.

We interpret an insurance contract as a matter of law and our review is *de novo. Cincinnati Ins. Co. v. Motorists Mut. Ins. Co.,* 306 S.W.3d 69, 73 (Ky. 2010). In doing so, we apply certain rules of construction, including that when the terms of an insurance contract are unambiguous and not unreasonable, the terms will be enforced as written. *Wehr Constructors, Inc. v. Assurance Co. of America,* 384 S.W.3d 680, 685 (Ky. 2012).

Unambiguously defined terms are "interpreted in light of the usage and understanding of the average person." *Stone v. Kentucky Farm Bureau Mut. Ins. Co.*, 34 S.W.3d 809, 811 (Ky. App. 2000). Although ambiguous terms are to be construed in favor of the insured, "we must also give the policy a reasonable interpretation, and there is no requirement that every doubt be resolved against the insurer." *Id.* Moreover, there must be an actual ambiguity. "The mere fact that [a party] attempt[s] to muddy the water and create some question of interpretation does not necessarily create an ambiguity." *Kentucky Ass'n of Counties All Lines Fund Trust v. McClendon*, 157 S.W.3d 626, 633–34 (Ky. 2005) (quoting *True v. Raines*, 99 S.W.3d 439, 443 (Ky. 2003)).

Relying on *James Graham Brown Found., Inc. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273 (Ky. 1991), Davis and Woods suggest that despite the general rules of interpretation cited, the term "occurrence" in the Kentucky Farm Bureau policy must be construed broadly to provide the maximum amount of coverage. In *James Brown*, the policy defined "occurrence" as "[a]n accident, including continuous or repeated exposure to conditions, which result in bodily injury or property damage, *neither expected nor intended from the standpoint of the insured.*" *Id.* at 275 (emphasis added). As our Supreme Court would later explain in *Cincinnati Ins. Co.*, its earlier decision in *James Brown* to apply a broad construction hinged on the policy language "referencing the expectations and intentions of the insured" leading it "to adopt a broad, subjective standard of policy construction." *Cincinnati Ins. Co.*, 306 S.W.3d at 78. The Court observed that its pronouncement of a broad interpretation of an insurance policy's definition of occurrence was of limited value when the policy "completely omits from the definition of *occurrence* any language referencing the expectations or intent of the insured." *Id.*

The Kentucky Farm Bureau policy does not contain any language referencing the expectations or intent of Trina's and, more importantly, the issue in this case is not whether there is coverage as was the case in *James Brown*. The issue is the extent of that coverage.

The trial court concluded the claims arose from a single cause and a single occurrence. Davis and Woods contend the trial court erred because it was required to determine the amount of insurance coverage available by the number of causative acts that contributed to Ja'Corey's death.

As was stated in *Southern Sur. Co. of New York v. Heyburn*, 234 Ky. 739, 29 S.W.2d 6, 7 (1930): "Every accident is an occurrence. But not every occurrence is, strictly speaking, an accident." In the context of an insurance policy, "occurrence" is "construed as synonymous with an accident or kindred act—an unforeseen occurrence resulting in bodily injury to a person other than the one indemnified which may give rise to a claim against the insured." *Id.*

For purposes of triggering insurance coverage, the prevailing rule is that the time of the occurrence of an accident is when the complaining party was actually damaged or injured and not the time when the wrongful act was committed. *See Stillwell v. Brock Bros., Inc.*, 736 F.Supp. 201, 205 (S.D. Ind. 1990). This approach is based on the fundamental notion that "the tort of negligence is not deemed to have been committed unless and until some damage is done." *Id.* (quoting *Muller Fuel Oil Co. v. Insurance Co. of North America*, 95 N.J.Super. 564, 579, 232 A.2d 168, 175 (1967)).

The same approach is not necessarily taken when the question is whether there

were multiple occurrences for purposes of the policy limitations. Although in most instances it is clear whether there are one or multiple occurrences, the question of what constitutes a single "occurrence" or "accident" within the meaning of a policy limits clause in a liability insurance policy generally arises under certain conditions: (1) the insured has damaged several individuals; (2) the insured damaged several pieces of property owned by the same individual or entity; or (3) the insured has committed several acts of negligence which have each independently damaged one individual. Michael P. Sullivan, Annotation, *What Constitutes Single Accident or Occurrence Within Liability Policy Limiting Insurer's Liability to a Specified Amount per Accident or Occurrence*, 64 A.L.R.4th 668 § 2[a] (1988). Under the prevailing cause approach, the number of occurrences is determined by whether there is "but one proximate, uninterrupted and continuing cause which resulted in all of the injuries and damages." *Appalachian Ins. Co., v. Liberty Mut. Ins. Co.*, 676 F.2d 56, 61 (3rd Cir. 1982) (quotation and citation omitted).

The parties agree that Kentucky's then Supreme Court adopted the cause approach in *Continental Ins. Cos. v. Hancock*, 507 S.W.2d 146 (Ky. 1973), where the Court held despite that there were multiple tortfeasors and injured parties, there was nevertheless a single occurrence. In that case, Continental's insured, Walter Simpson, operated a nightclub and was sued by three nightclub patrons injured after a fight ensued with nightclub employees. Multiple events culminated in the fight. After a patron insulted a waitress, Simpson asked the patron to leave. A scuffle commenced and Simpson tore the patron's shirt and then forced him to leave along with his two companions. The three patrons remained outside for a time and Simpson went outside and the men continued their disagreement. Simpson then re-turned inside after which three employees went outside. A fight then ensued between the employees and the patrons. The patrons alleged injuries and filed a civil action against Simpson. *Id.* at 148.

The Court rejected the assertion that because there were multiple negligent and intentional acts and persons injured, there were multiple occurrences for purposes of limitations on coverage provision under the Continental policy. Its reasoning was based on the cause approach:

The maximum limit of liability of the insurer for any one occurrence was $50,000.00. The policy provided that all bodily injury "arising out of continuous exposure to substantially the same general conditions shall be considered as arising out of one occurrence." We think the facts of this case established that there was only one occurrence and the holding of the trial court to the contrary was clearly erroneous.

*Id.* at 152.

The parties differ as to the application of the cause approach. Kentucky Farm Bureau contends that there was only one occurrence as defined in the insurance policy, Ja'Corey's choking on a push-pin. Davis and Woods present an innovative argument that even where only a single injury results, under the cause approach, the amount of coverage available depends upon the number of negligent acts that caused the injury.

While a novel argument in this jurisdiction, it is arguably supported by a handful of cases from other jurisdictions. However, we conclude that those cases are either distinguishable on their facts or simply ill-reasoned.

Two cases relied on by Davis and Woods are Arizona decisions, one published and the other unpublished. In *Arizona Property & Casualty Ins. Guar. Fund v.*

*Helme,* 153 Ariz. 129, 735 P.2d 451 (1987), the Court held multiple acts of negligence constituted separate "occurrences" despite a single death. In that case, one physician failed to view spinal x-rays of a patient when treating him and another failed to review the x-ray before performing surgery. The Court held that under the policy terms, the independent acts of negligence on two separate days were separate causal acts and there were two covered claims under the malpractice insurance policy. *Id.* at 136, 735 P.2d at 458.

In the second Arizona case cited, *Austin Mut. Ins. Co. v. Aldecoa,* 2 CA–CV 2011–0040, 2011 WL 4794936 (Ariz.App.Div.2 2011) (unpublished), the Arizona Court of Appeals held that the acts of two grandparents constituted two occurrences under the homeowner's insurance policy. Two children drowned in their grandparents' swimming pool. The day before, the drowning, the grandmother left the gate to the pool unlatched and on the day of the drowning, the grandfather left the children unattended and the exterior door open. The Court relied on *Helme* and, under what it referred to as a causal analysis, held the acts of each grandparent constituted two causative acts and, therefore, two occurrences. *Id.* at 3.

The reasoning in *Helme* and *Austin* have been criticized by other jurisdictions as unsound. *See Bay Cities Paving & Grading Inc. v. Lawyers' Mut. Ins. Co.,* 5 Cal.4th 854, 21 Cal.Rptr.2d 691, 855 P.2d 1263 (1993); *Continental Cas. Co. v. Wendt,* 205 F.3d 1258 (11th Cir. 2000); *Columbia Cas. Co. v. CP Nat., Inc.,* 175 S.W.3d 339 (Tex. App. 2004). The federal district court in *Grain Dealers Mut. Ins. Co., v. Sharbono,* CV–12–02607–PHX–GMS, 2013 WL 6252435 (D. Ariz. 2013), not only questioned the reasoning in *Helme* and *Austin,* but squarely rejected the notion that the number of occurrences can be determined by the number of causative acts where the insurance policy provides that "occurrence" and "accident" are synonymous.

The federal court found it significant that the policy in *Helme* defined accident as "any incident, act or omission, or series of related incidents, acts or omission *resulting in* injury." *Id.* at 3. Noting that the policy under consideration defined occurrence as an accident, the Court emphasized that "[t]he usual understanding of [accident] 'clearly implies a misfortune with concomitant damage to a victim, and not the negligence which eventually results in that misfortune.'" *Id.* at 2 (quoting *GRE Ins. Grp. v. Green,* 194 Ariz. 251, 253, 980 P.2d 963, 965 (Ct. App. 1999)). The Court found the distinction in the policy language crucial. It stressed that the policy at issue did not define "occurrence" in causal language but defined "occurrence" as an "accident" with no reference to the causes of injury in its plain language. *Id.* at 3.

The federal court also found the reasoning in *Austin* inapplicable. It explained that the *Austin* Court applied the *Helme* causal analysis to determine the number of occurrences only because the parties agreed to its application. The Court held the policy contemplated coverage for each accident and not the individual acts of negligence that might have led to the accident. *Id.* There was only one accident, the collision. *Id.*

Davis and Woods also cite *St. Paul Fire and Marine Ins. Co. v. Hawaiian Ins. & Guar. Co.,* 2 Haw.App. 595, 596, 637 P.2d 1146 (1981). Like *Helme,* the Hawaii case was a medical malpractice case. It involved separate acts of physicians negligently administering anesthesia to a single patient. The Court held the separate acts constituted separate "claims" for purposes

of the coverage available. Notably, the policy stated:

> The limit of liability stated in the schedule as applicable to "each claim" is the limit of the company's liability for all damages because of each claim or suit covered hereby. The limit of liability stated in the schedule as "aggregate" is, subject to the above provision respecting "each claim", the total limit of the company's liability under this coverage and under this policy for all damages. The inclusion herein of more than one insured shall not operate to increase the limits of the company's liability.

*Id.* at 596, 637 P.2d at 1147. Because of the policy language, the Court held "the three separate acts of negligence alleged as causes of the death of the claimant are each claims, according to the commonly accepted meaning of that word in the law." *Id.* Here, the policy limitation of coverage provision is based on the number of occurrences, not claims.

The remaining cases cited by Davis and Woods are distinguishable. All involved either multiple acts separated by time injuring more than one person, separate acts of negligence causing property damage to multiple plaintiffs or multiple acts of negligence causing separate injuries. *See American Indemnity Co. v. McQuaig*, 435 So.2d 414 (Fla. App. 1983) (three shotgun blasts separated by time injuring two people); *Maurice Pincoffs Co. v. St. Paul Fire & Marine Ins. Co.*, 447 F.2d 204 (5th Cir. 1971) (each of eight sales of contaminated bird seed to eight different dealers was a separate occurrence); *Home Indem. Co. v. City of Mobile*, 749 F.2d 659 (11th Cir. 1984) (over 200 lawsuits filed after flooding to property); *Colbert County Hosp. Bd. v. Bellefonte Ins. Co.*, 725 F.2d 651 (11th Cir. 1984) (patient could recover for three claims against hospital for three separate hospital admissions producing separate injuries).

Both parties cite *Gateway Insurance Co. v. Security Taxicab, Inc.*, 5:02CV–237–R, 2003 U.S. Dist. LEXIS 27536 (W.D.Ky. 2003) (unpublished), in support of their respective arguments and, therefore, we believe it is necessary to comment on its application. However, like the cases cited solely by Davis and Woods, because of its facts, *Gateway* also offers little persuasive guidance.

Like the majority of cases addressing the cause approach, *Gateway* involved two separate incidents. A taxicab driver sexually assaulted two victims at separate times. Applying Kentucky law, the federal district court recognized Kentucky follows the cause approach in determining the number of "occurrences" or "accidents" as that term is used in an insurance policy. *Id.* at 40. The court held that under the cause approach, the separate assaults were separate accidents under the policy. Each victim's claim was a separate and independent attack occurring at different times of the day. *Id.* at 46. In this case, that same reasoning cannot be applied.

The federal court also addressed whether the *Hancock* cause approach could logically be applied to the separate claims for negligent hiring, retention and supervision. Unfortunately for Davis and Woods, if the court's discussion lends insight in resolving the issue presented in this case, it is unfavorable to their desired result.

The *Gateway* court held that although there were multiple victims and the assault occurred at separate times, there was but one occurrence for purposes of the amount of coverage. The court reasoned that determining the cause of the injuries to the two victims "for 'accident' purposes must return to the negligence that gives rise to that coverage." *Id.* at 44. The continuing

acts of negligence by the tortfeasor's employer in failing to supervise its employee constituted a single occurrence subject to the policy's single "accident" limitation. *Id.* at 45. Applying that same reasoning, the separate acts of negligence alleged by Davis and Woods cannot transform a single "accident" into multiple "accidents." *Id.*

We do find pervasive the language in the factually analogous case of *Flemming ex rel., Estate of Flemming v. Air Sunshine, Inc.*, 311 F.3d 282, 295 (3d Cir. 2002), where it was alleged there were four separate occurrences surrounding a plane crash: "1) the plane crash itself; 2) the failure to provide a pre-flight safety briefing; 3) the failure to notify passengers of the impending crash and failure to provide emergency safety instructions; and 4) after the crash, the failure to provide any aid to James Flemming." The court held that even if each allegation of negligence was true, the negligent acts "constitute[d] a single occurrence under the terms of the insurance policy." *Id.* The allegations of pre-crash negligence did not "meet the policy definition of 'occurrence' because they simply cannot be seen as 'accidents' independent from the crash itself." *Id.* None of the alleged acts would have caused any injury absent the crash. *Id.* The court concluded "[c]ommon sense dictates that only one 'accident' occurred here: the plane crash." *Id.* at 296.

Following the same reasoning, in *Nationwide Mut. Fire Ins. Co. v. Kubacko*, 124 Ohio App.3d 282, 706 N.E.2d 17 (1997), the Court considered the definition of occurrence in a case involving burns suffered by a child while in the care of an insured. After the child was burned, the child was placed in a bathtub containing hot water and the insured did not seek treatment for the child until several hours later. The Ohio Court of Appeals concluded that despite the number of negligent acts, the child's injuries arose from a single occurrence. *Id.* at 290, 706 N.E.2d at 23.

Finally, we are in agreement with the succinct summation given in *Koikos v. Travelers Ins. Co.*, 849 So.2d 263, 271 (Fla. 2003):

The insured's alleged negligence is not the "occurrence"; the insured's alleged negligence is the basis upon which the insured is being sued by the injured party. Focusing on the immediate cause-that is the act that causes the damage-rather than the underlying tort-that is the insured's negligence-is also consistent with the interpretation of other forms of insurance policies.

Davis and Woods allege various acts of negligence and theories of liability against Trina's and its employees. As noted by Davis and Woods, they may pursue causes of action against Trina's for its own negligence and for respondeat superior liability due to the negligent acts or omissions of its employees. *See MV Transp., Inc. v. Allgeier*, 433 S.W.3d 324 (Ky. 2014). They may also pursue claims against the employees individually for their negligence. Moreover, if there had been more than one insurance policy, Davis and Woods would have claims under those policies, even though only one accident occurred.

However, merely because there were multiple negligent acts that combined to cause a single injury or multiple causes of action may be asserted does not mean there were multiple occurrences as that term is unambiguously defined in the Kentucky Farm Bureau policy. There are frequently multiple acts of negligence that cause a single injury. For instance, a negligent driver in a car accident may have been inattentive because he was intoxicated and distracted by his texting and speeding. As a result of the driver's negligence, a collision occurs injuring another person.

Under those circumstances, although there were multiple acts of negligence, it cannot be reasonably argued there was more than one accident caused by the driver's negligence.

Under the unambiguous language of the policy, the meaning of "occurrence" in the Kentucky Farm Bureau policy is "accident." There was only one accident, Ja'Corey's choking on a push-pin. The $500,000 limit applies.

For the reasons stated, the judgment of the Jefferson Circuit Court is affirmed.

ALL CONCUR.