RENDERED: MAY 17, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

ORDERED PUBLISHED: JUNE 21, 2024; 10:00 A.M.

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0611-MR

NINA COLVIN, AS PARENT AND
STATUTORY GUARDIAN ON
BEHALF OF W.M.C., A MINOR                                    APPELLANT


APPEAL FROM JEFFERSON CIRCUIT COURT
v.        HONORABLE JENNIFER BRYANT WILCOX, JUDGE
ACTION NO. 22-CI-004729


NAUTILUS INSURANCE
COMPANY; OUTER LOOP CHILD
CARE, INC.; AND RAMIAH BERRI
DOUGLAS                                                      APPELLEES

AND


NO. 2023-CA-0679-MR

NAUTILUS INSURANCE COMPANY                                   APPELLANT


APPEAL FROM JEFFERSON CIRCUIT COURT
v.        HONORABLE JENNIFER BRYANT WILCOX, JUDGE
ACTION NO. 22-CI-004729

NINA COLVIN, AS PARENT AND
STATUTORY GUARDIAN ON
BEHALF OF W.M.C., A MINOR;
OUTER LOOP CHILD CARE, INC.;
AND RAMIAH BERRI DOUGLAS                                              APPELLEES

OPINION
AFFIRMING APPEAL NO. 2023-CA-0611-MR AND
REVERSING AND REMANDING APPEAL NO. 2023-CA-0679-MR

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; EASTON AND GOODWINE,
JUDGES.

GOODWINE, JUDGE:  Nina Colvin ("Colvin") and Nautilus Insurance Company

("Nautilus") separately appeal from the May 11, 2023 order of the Jefferson

Circuit Court.  We affirm the order in appeal No. 2023-CA-0611-MR, and reverse

and remand it in appeal No. 2023-CA-0679-MR.

## BACKGROUND

Nautilus issued a commercial general liability coverage ("GLC")

policy to Outer Loop Child Care ("Outer Loop") for the period of December 31,

2020 to December 31, 2021.  The terms of the policy included a $1,000,000 limit

per "occurrence" and a $2,000,000 "general aggregate limit."  Record ("R.") at 42.

The terms of the policy defined "occurrence" as "an accident, including continuous

or repeated exposure to substantially the same general harmful conditions."  *Id*. at

57.  Outer Loop also purchased an abuse or molestation limited liability coverage endorsement ("the endorsement").

The endorsement, in relevant part, modified Outer Loop's GLC as follows:

> Except as provided by this endorsement, . . . [t]his insurance does not apply to "bodily injury", "property damage", "personal and advertising injury" or medical payments arising out of "abuse or molestation".
>
> . . .
>
> Subject to the Abuse or Molestation Liability Aggregate Limit shown in the Schedule, the Abuse or Molestation Liability Each Event Limit shown in the Schedule is the most we will pay for the sum of all "bodily injury" because of "abuse or molestation" arising out of any one "event".
>
> . . .
>
> "Abuse or molestation" means "bodily injury" to any person while in the care, custody or control of any insured, arising out of actual or threatened abusive behavior, conduct, or verbal or nonverbal communication whether such "bodily injury" is:
>
> > a. For sexual gratification, discrimination, intimidation, coercion, or for any other purpose; or
> >
> > b. Results in emotional or psychological injury or harm of any person(s).
>
> "Abuse or molestation" includes the negligent:
>
> > a. Employment;
> >
> > b. Supervision;

c. Investigation;

d. Reporting to the proper authorities or failure to so report; or
e. Retention;

of a person whose behavior, conduct or verbal or nonverbal communication results in "abuse or molestation".

. . .

"Event" means one or more acts of "abuse or molestation" committed by one person, or two or more persons acting together or in concert, against one or more persons, taking place over a period of time. The "event" commences on the date the first act of "abuse or molestation" is committed and ends on the date the last act of "abuse or molestation" is committed.

*Id.* at 69-72. Under the terms of the endorsement, the liability limit for each "event" was $100,000 and the aggregate limit was $300,000. *Id.* at 69.

Ramiah Berri Douglas ("Douglas") was an employee of Outer Loop during the relevant period. W.M.C., Colvin's minor child, attended daycare at Outer Loop. On April 1, 2021, Douglas used painter's tape to bind the child's wrists to force her to take a nap. On November 22, 2021, Colvin, on behalf of the child, filed suit ("Colvin lawsuit") against Douglas and Outer Loop alleging assault and battery, negligence and gross negligence, and false imprisonment. Colvin also asserted claims against Outer Loop for premises liability, and negligent training and supervision. Under the terms of the insurance policy, Nautilus agreed to

-4-

defend both Outer Loop and Douglas subject to a full and complete reservation of rights.[1]

On September 12, 2022, Nautilus filed an action for declaratory judgment asking the trial court to determine the endorsement includes the maximum limit of coverage available under Outer Loop's policy for all claims asserted in the Colvin lawsuit because they all arise from the child's injury. In the complaint, Nautilus alleged Colvin made a demand for $1,100,000, claiming the policy "provided a limit of $100,000 for Douglas *and* a separate $1,000,000 for Outer Loop, purportedly resulting in a $1,100,000 limit of available coverage under the Nautilus Policy." *Id*. at 6. Colvin's counsel threatened to pursue bad faith and Unfair Claims Settlement Practices Act ("UCSPA")[2] claims against Nautilus if it did not settle the matter for $1,100,000. *Id*. Nautilus offered to settle the matter for $100,000, reasoning that the sublimit under the endorsement was the maximum available for the claims made in the Colvin lawsuit. *Id*. at 7. Colvin rejected Nautilus' offer and continued to demand $1,100,000, leading Nautilus to file suit. *Id*.

---

[1] The Colvin lawsuit has since proceeded to trial and a jury found in Colvin's favor, awarding her a total of $55,000 in damages for the child's physical and mental pain and suffering. Colvin has appealed, and Douglas and Outer Loop have filed cross-appeals. Those matters remain pending before this Court. The issues therein are distinct from those raised in this matter.

[2] Kentucky Revised Statutes ("KRS") 304.12-230.

Colvin argued Nautilus "deliberately misconstrued" its own policy to avoid indemnification and coverage and raised a counterclaim under the UCSPA. *Id*. at 179. She requested the court declare the policy limits as $1,000,000 for her negligent training claim against Outer Loop and $100,000 for the claims resulting from Douglas' "abuse or molestation" of the child. Colvin also sought compensatory and punitive damages for Nautilus' alleged violation of the UCSPA.

Both parties moved for summary judgment on their claims. In a pair of orders entered on April 12, 2023, the trial court determined that "because Nautilus did not explicitly list negligent training within the 'abuse or molestation' sublimit and because claims for negligent training are considered separate causes of action distinct from the claims against the employee, Nautilus' motion for summary judgment must be denied." *Id*. at 805. For this reason, the court held Nautilus could be liable to indemnify Outer Loop up to $1,000,000, the occurrence limit, for the negligent training claim alone. The court further found the endorsement's $100,000 sublimit applied to Colvin's remaining claims of premises liability, negligent supervision, assault and battery, negligence, gross negligence, and false imprisonment. Therefore, the court found Nautilus could be liable to indemnify its insured up to $1,100,000.

The court also denied Colvin's motion for summary judgment on her UCSPA claim because she failed to show Nautilus did not have a reasonable basis

in law or fact to deny the claim, and failed to prove Nautilus either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed under *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993) (citation omitted).

Nautilus moved to alter or amend the court's orders under CR[3] 59.05. On May 11, 2023, the trial court granted Nautilus' motion for summary judgment on Colvin's UCSPA claim. The court also made its orders, including its determination of the policy limits, final and appealable under CR 54.02.

These appeals followed.

## STANDARD OF REVIEW

> The proper standard of review on appeal when a trial judge has granted a motion for summary judgment is whether the record, when examined in its entirety, shows there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. The trial judge must view the evidence in a light most favorable to the nonmoving party, resolving all doubts in its favor. Because summary judgment does not require findings of fact but only an examination of the record to determine whether material issues of fact exist, we generally review the grant of summary judgment without deference to either the trial court's assessment of the record or its legal conclusions.

*Bruner v. Cooper*, 677 S.W.3d 252, 269 (Ky. 2023) (footnote omitted). Because issues of construction and interpretation of written instruments, including

---

[3] Kentucky Rules of Civil Procedure.

insurance policies, are questions of law, we also review them without deference to the trial court's interpretation. *Ritchie v. Turner*, 547 S.W.3d 145, 148 (Ky. App. 2018) (citation omitted).

## ANALYSIS

In appeal No. 2023-CA-0611-MR, Colvin argues the trial court erroneously granted summary judgment in Nautilus' favor on her claim under the UCSPA. In appeal No. 2023-CA-0679-MR, Nautilus argues: (1) the trial court erroneously determined the endorsement did not cover Colvin's claim because "negligent training" was not specifically listed in the definition of "abuse and molestation;" (2) if Colvin's negligent training claim falls outside of the endorsement, it would not be covered by the GLC policy, but would instead be excluded from coverage entirely; and (3) the trial court erred by determining the total policy limit to be $1,100,000 in excess of the policy's limit per occurrence.[4]

For purposes of our analysis, we will first address the arguments raised by Nautilus.

First, the trial court erred in its interpretation of the language of the endorsement. "[T]he terms of an insurance contract must control unless [they] contraven[e] public policy or a statute." *Ritchie*, 547 S.W.3d at 148 (citation

---

[4] Colvin did not file an appellee brief in appeal No. 2023-CA-0679-MR. Outer Loop filed an appellee brief in appeal No. 2023-CA-0679-MR but not in appeal No. 2023-CA-0611-MR. Douglas did not separately file a brief in either appeal but does share counsel with Outer Loop.

omitted).  The rights of the parties must be determined from the terms on which they agreed.  *Id*. (citation omitted).  "Terms used within insurance contracts should be given their ordinary meaning as persons with the ordinary and usual understanding would construe them."  *Id*.  (internal quotation marks and citation omitted).  Insurers have the "unquestioned right" to use contract terms as they deem necessary and proper to limit or exempt themselves from liability.  *See id.* at 149 (citation omitted).

Here, the trial court held Colvin's negligent training claim against Outer Loop fell outside the endorsement because its definition of "abuse or molestation" did not explicitly list negligent training.  Nautilus argues this interpretation disregards the fact that all of Colvin's claims, including negligent training, "arise out of" Douglas' abuse of the child.  We agree.

The endorsement altered Outer Loop's CGL policy to state that the policy did not apply to "'bodily injury' . . . or medical payments **arising out of** 'abuse or molestation.'"  R. at 69 (emphasis added).  The endorsement defines "abuse or molestation" as

> "Abuse or molestation" means "bodily injury" to any person while in the care, custody or control of any insured, **arising out of** actual or threatened abusive behavior, conduct, or verbal or nonverbal communication whether such "bodily injury" is:
>
> > a. For sexual gratification, discrimination, intimidation, coercion, or for any other purpose; or

> b. Results in emotional or psychological injury or harm of any person(s).

"Abuse or molestation" includes the negligent:

>   a. Employment;
>
>   b. Supervision;
>
>   c. Investigation;
>
>   d. Reporting to the proper authorities or failure to so report; or
>
>   e. Retention;
>
> of a person whose behavior, conduct or verbal or nonverbal communication results in "abuse or molestation".

*Id*. at 72 (emphasis added). In an insurance policy, "arising out of" has been interpreted as "broad, general and comprehensive terms meaning 'originating from,' or 'having its origin in,' 'growing out of' or 'flowing from.'" *Hugenberg v. West American Ins. Company/Ohio Cas. Group*, 249 S.W.3d 174, 186 (Ky. App. 2006) (footnote omitted). There must only be a "causal connection" between the injury and the claim. *Id*.

The endorsement applied to all claims of bodily injury arising out of abuse or molestation. This includes all of Colvin's claims, including her negligent training claim against Outer Loop. Like all of her other claims, the negligent training claim flows from the bodily injury her child suffered. It is fundamental that "the tort of negligence is not deemed to have been committed unless and until

-10-

some damage is done." *Davis v. Kentucky Farm Bureau Mutual Ins. Co.*, 495 S.W.3d 159, 162 (Ky. App. 2016) (citation omitted). If not for Douglas' actions causing injury to the child, there would be no claim for negligent training against Outer Loop. *See Hugenberg*, 249 S.W.3d at 187. This is a sufficient causal connection to prove Colvin's claim falls within the endorsement.

Although nonbinding on this court, the decision of the Tenth Circuit Court of Appeals in *Nautilus Insurance Company v. Our Camp Inc.*, 136 F. App'x 134 (10th Cir. 2005), concerns a similar issue regarding nearly identical language in a policy issued by Nautilus. Therein, Nautilus issued a policy to Our Camp including an exclusion which read:

> This insurance does not apply to "bodily injury," "personal injury" or medical payments arising out of:
>
> (1) The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured; or
>
> (2) The negligent:
>
> (a) employment;
>
> (b) investigation;
>
> (c) supervision;
>
> (d) reporting to the proper authorities, or failure to so report; or
>
> (e) retention;

> of a person for whom any insured is or ever was
> legally responsible and whose conduct would be
> excluded by (a) above.

*Id.* at 136.[5]

In an underlying lawsuit, a former camper sued Our Camp alleging he was sexually abused by another camper. *Id.* In part, he claimed Our Camp **negligently trained** and supervised its counselors. *Id.* Nearly identical to the definition used by our Courts, the Tenth Circuit defines "arising out of" as "broad, general and comprehensive terms . . . understood to mean originating from, growing out of or flowing from the use[,]" needing only evidence to demonstrate a "causal connection[.]" *Id.* at 137-38. The court held the plaintiff's alleged injuries

> clearly originated from, grew out of or flowed from the
> alleged abuse and molestation. The exclusion at issue
> unambiguously excludes coverage for all types of
> negligent conduct arising out of the abuse or molestation
> by anyone of any person while in the care, custody or
> control of any insured.

*Id.* at 138. The court persuasively reasons that

> [i]t is impossible for [the insurance company] to
> anticipate every claim that creative counsel will craft in
> order to draft a complaint that will trigger coverage. . . .
> Here, the abuse or molestation clause makes it crystal
> clear that no coverage is provided to employers for their
> negligence relating to any abuse or molestation.

---

[5] This is a policy exclusion, not an endorsement, meaning that the Our Camp's policy did not cover injuries arising out of abuse or molestation, whereas the Outer Loop endorsement limited liability for such claims. Despite this difference, we find it instructive.

*Id.*

We are convinced that it is not enough for Colvin to raise a claim outside of those specifically listed in the endorsement. Our analysis, like that of the Tenth Circuit, must broadly consider the causal connection between the alleged injuries and claims. Here, we can only conclude that all of Colvin's claims are based on the bodily injury her child suffered on April 1, 2021, and that injury originated or flowed from Douglas' conduct. Just as the Tenth Circuit found all negligent conduct was excluded under Our Camp's policy, so too is such conduct covered by Outer Loop's endorsement. Therefore, all of Colvin's claims are subject to the $100,000 sublimit.

We need not address the merits of Nautilus' remaining arguments because the above-analysis is determinative of appeal No. 2023-CA-0679-MR.[6]

In appeal No. 2023-CA-0611-MR, the trial court properly granted summary judgment in favor of Nautilus on Colvin's UCSPA claim. The UCSPA

---

[6] Although the trial court is correct that, under *MV Transportation, Inc. v. Allgeier*, 433 S.W.3d 324, 337 (Ky. 2014), a plaintiff may make claims against an employer based on both its vicarious liability for an employee's conduct and its own negligent hiring, retention, supervision, or training, this has no bearing on our analysis. Our decision does not depend on the number of separate claims or causes of action which may be asserted where there is a single injury. *See Davis*, 495 S.W.3d at 166. When a similar argument was made in *Our Camp*, the Tenth Circuit held "[e]ven if a tort analysis might indicate separate or concurrent causes of [a plaintiff's] injuries, we must view the causes in th[e] insurance contract dispute as originating from, growing out of or flowing from the abuse that occurred." 136 F. App'x at 138 (internal quotation marks and citation omitted). We agree.

requires that "an insurance company must deal in good faith with a claimant in determining whether the company is contractually obligated to pay the claimant." *Mosley v. Arch Specialty Ins. Co.*, 626 S.W.3d 579, 584 (Ky. 2021) (footnote omitted). "This is true whether the claimant is the company's own insured, or the company insures the claimant's tortfeasor." *Id.* To succeed on a claim of bad faith under the UCSPA, a plaintiff must prove:

> (1) the insurer must be obligated to pay the insured's claim under the terms of the policy;
>
> (2) the insurer must lack a reasonable basis in law or fact for denying the claim; and
>
> (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed.

*Id.* (citing *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993)).

Colvin argues Nautilus "behaved like a bully and tried to strong-arm what it perceived to be a weak claimant" by filing the underlying action. Appellant's Brief at 6. She claims the action was baseless because "training" was not listed in the definition of "abuse or molestation." This argument is without merit based on our analysis in appeal No. 2023-CA-0679-MR. Nautilus correctly asserted that training need not be included in the definition for Colvin's negligent training claim to be covered by the endorsement. It was reasonable for Nautilus to refuse to settle Colvin's claims for an amount outside its policy's limits. Despite

Colvin's argument to the contrary, Nautilus did not act in bad faith by offering to settle Colvin's claims for $100,000, the sublimit under the endorsement. Therefore, Colvin's UCSPA claim fails on both the second and third *Wittmer* factors.

## CONCLUSION

Based on the foregoing, in appeal No. 2023-CA-0611-MR, the May 11, 2023 order of the Jefferson Circuit Court is affirmed as to the summary judgment on Colvin's claim under the UCSPA. In appeal No. 2023-CA-0679-MR, the order is reversed and remanded as to the determination of policy limits. Because all of Colvin's claims, including negligent training, arise out of a single event of abuse or molestation, they are subject to the $100,000 sublimit.

ALL CONCUR.

| BRIEF FOR NINA COLVIN: | BRIEF FOR OUTER LOOP CHILD CARE, INC.: |
|---|---|
| Jeffrey A. Sexton<br>Louisville, Kentucky | Charles A. Walker<br>Cash C. Collins |
| BRIEFS FOR NAUTILUS<br>INSURANCE COMPANY: | Louisville, Kentucky |
| Kristin M. Lomond<br>Bradly E. Moore<br>Louisville, Kentucky | |